## ADAMS v. WOODS AND HASKELL.

Creditors of a firm can pursue their remedy at law, after a bill for a dissolution is filed by one of the partners, and before a decree of dissolution; any other rule would permit the partners indefinitely to postpone the payment of their debts.

Creditors can attack the whole proceedings at any time before the distribution of the assets, on the ground that it was instituted to delay, hinder, and defraud creditors.

A bill for a dissolution and the appointment of a receiver, cannot operate as an assignment for the benefit of creditors, so as to prevent a creditor from acquiring a legal priority, because all such assignments, except in insolvency, are void under the statute.

WRIT OF ERROR to the District Court of the Fourth Judicial District.

Lynch and others filed their bill of intervention in the Court below, claiming that they were judgment-creditors of Adams & Co., and seeking to have the funds in the hands of the receiver applied to the payment of the debts. The bill alleges that the house of Adams & Co. became insolvent on the twenty-third of February, 1855; that on that day I. C. Woods, the resident and managing partner of the firm, filed, or caused to be filed, a bill in equity in the Fourth District Court, in the name of Alvin Adams, an absent partner, against himself and Haskell; that this bill does not allege a dissolution, or insolvency, but mismanagement of the partnership affairs, and seeks for a dissolution, an injunction, an accounting, the appointment of a receiver, and the application of the assets to the copartnership debts, and that in aid of the receiver, an assignment, in fact, was made by all the parties, to Cohen, as receiver.

The intervenors allege that this suit was collusive and fraudulent, instituted by Woods for the purpose of hindering and delaying the creditors of Adams & Co. They further allege that they commenced their suits about March 9, 1855, by attachment, and recovered final judgment on the thirty-first of May, 1855, before there had been a decree of dissolution in the case of Adams v. Woods and Haskell.

*Mastick, and McDougall & Sharpe,* for Petitioners.

It will not be denied that equity has jurisdiction in matters of account between copartners, but here not merely the matters of account but the administration of the estate is collusively, and, as we allege, fraudulently thrust upon the Court by parties who are not controverting, but confederating, not for purposes of adjudication, but as a temporary expedient to make arrangements for proceeding in bankruptcy—a step requiring more preparation and caution.

The complaint is filed, not alleging insolvency or a fraudulent conversion of partnership assets, or danger of loss. Service is accepted and a receiver appointed, and bond given, the same day or night, without notice or motion by arrangement between all parties and the receiver.

Here a Court of Equity, at the instance of a bankrupt and fraudulent firm, takes jurisdiction of their entire matters of litigation, and possession of their entire property, or so much thereof as they choose to exhibit.

We have prohibited by statute general assignments. Here is an assignment which is supposed to place the assigned property on sacred ground, yet always under the control of the assignors, or at least under the control of the assignor until the decree of dissolution.

It would be a mistake to suppose that the jurisdiction of equity corresponded with the extraordinary statutory jurisdiction in

proceedings in bankruptcy. For that system, laws have been carefully framed, and a course of administration carefully and completely established. A Court of Equity never was an officer for the administration of partnership or bankrupts' estates, and no rules of practice answering such a purpose can be found in the books or the reports. Courts never assume such burdens, except in cases of *bona fide* controversies where there is a specific dispute as to right. No such controversy or dispute can be found in the origin of this cause, or the matters set forth in the complaint.

It is confidently asserted there is no authenticated case, without this should be one, where equity has ever interfered between creditors and the legal assets of a bankrupt firm before decree of dissolution.

A creditor's bill, from which the opposite party draws his analogies, as known to the English, and, if the term is admissible, common law system, is a suit brought by creditors against executors and administrators to settle an estate. 1 Story's Eq. Juris., 547, et seq.

"The general rule upon which money is required to be paid into Court (*i. e.* to receiver) is this, that the party who is entitled to the fund is also entitled to have it secured." 2 Story's Eq. Juris., 841.

How have these parties shown any right to have their assets secured? Secured against whom? Themselves? No : against their creditors !

It is clear from all the authorities, that equity in a proceeding between partners for a dissolution, acquires no jurisdiction over the assets, either to marshal or distribute them, and no power over the creditors to limit or control their rights at law, until when, upon a decree of dissolution, the Court, having destroyed the copartnership, assumes the place of the copartners, and then the Court must administer the copartnership assets, and then the rule is :

Legal assets must be administered according to the course of the law, and the rule of the maxim "*equitas sequitur legem.*" Equitable assets, where no liens have been acquired, and where no marshaling is required, will be distributed according to the maxim that "equality is equity." See 1 Story's Eq. Jur., 553–4.

It is further contended, that if it be true that the intervenors had no right to attach, and took nothing by their attachments, that then they have rights in this cause, as judgment-creditors, with a return of executions *nulla bona*. This position must be certainly true, if the suit of Adams *v.* Woods and Haskell was fraudulently instituted, and therefore void.

If the receiver was, in fact, a sacred officer, and if the Court will protect the funds through the hands of assignees and receivers against creditors : yet these creditors have appealed to

the Courts and the law, and exhausted all remedy. They now ask that they may come in with their established rights, and claim these assets, as having been the most diligent.

They were the first parties showing an absolute legal right to satisfaction out of these funds, and having exhibited this right to the Court, it is the duty of the Court to administer the same.

*Saunders & Hepburn,* Contra.

On the twenty-eighth day of April, 1856, the appellants, Lynch, Savage, et al., filed their intention in this case, the whole object of which is to possess themselves of the funds in the hands of the receiver, and gain thereby a preference over the other creditors of the insolvent partnership.

As a general rule, it is true that the creditors of a partnership have no interest in a partnership suit, until after a decree of dissolution, and that in the mean time one creditor may go ahead against the partners and get an advantage, if he can. The reason of this is, that until a decree of dissolution *non constat* that the partnership is insolvent, or that the Court will meddle with its affairs, either for account of the complaining partner or the creditors, and at such a stage of the proceedings, the creditors having no interest in the suit, and not being parties to it, have, each of them, the obvious right to sue for his own account. That however, is not the case; for here we have not only the plaintiff Adams, but the defendants Woods and Haskell, on the day of the suit brought, consenting to close their business, to put their assets into the hands of the Court and out of their own power, for the purpose of closing the partnership concerns, and paying the partnership debts.

Williamson *v.* Wilson; 1 Holmes Chancery R.; and Warring *v.* Robinson, 1 Hoffman's Chancery R., 531, 532.

MURRAY, C. J., delivered the opinion of the Court—BURNETT, J., concurring.

The bill is carefully drawn, and the facts constituting fraud are distinctly stated. The Court below permitted the intervention to be filed, but refused to stay proceedings in the case, or afford the parties any affirmative relief, but directed the receiver to proceed and distribute the money in his hands *pro rata* among the creditors; from which orders and rulings the intervenors have appealed.

The case made, involves two propositions:

1. Whether a creditor of the firm could pursue his remedy at law after the bill was filed and the receiver appointed, but before a decree of dissolution.

2. Whether a creditor could attack the whole proceeding on the ground of fraud and collusion between the parties.

It may be premised, *in limine*, that the bill filed by Alvin

Adams, did not warrant the appointment of a receiver. It does not allege insolvency or fraudulent conversion of the partnership assets, or danger of loss of the same, in the hands of the firm. It is true that equity has jurisdiction in matters of account, but it ought not, except in a clear case, to step between a debtor and his creditors; neither should it assume the position of banker and bailee, for those who, by their own showing, are sufficiently competent to manage their own affairs.

It will not be denied that the creditors of a partnership have no interest in a partnership suit or proceeding for account and dissolution, until after a decree of dissolution, and that, in the mean time, they may pursue their remedies at law, and thereby secure a preference or lien upon the partnership assets.

That until a decree of dissolution, it is not certain that the firm is insolvent, or that the Court will administer the assets. Under such circumstances, it would be obviously unjust to deny a creditor who was not a party to a suit, the right to prosecute an action for the recovery of his claim. There is another reason for this rule which is conclusive. These proceedings are under control of the partnership alone; they may be protracted indefinitely, or they may be dismissed at the will of the parties, and a Court of Equity would not allow itself to become an asylum for bankrupt and fraudulent debtors. It is contended, however, that the assignment by all the parties to Cohen, the receiver, was a voluntary surrender of the assets into the hands of the Court, to be administered for the benefit of all the creditors, and that this proceeding was thus turned into a creditor's bill.

This leads us to inquire into the effect of this assignment. Under the statute of this State concerning insolvent debtors, every species of assignment, except those made in conformity with the act, are declared void. This relates as well to judicial as to other assignments. If such were not the case, then the Legislature would have failed entirely in the object designed by the act; for the temples of justice would be converted into a den of thieves and money-changers, and the judges compelled to become accessories to the grossest frauds. In the case of Warring *v.* Robinson et al., which is relied on by the counsel of the respondents, the Court say:

"There is another rule of law bearing on this question: an assignment by one partner, of his share in the property, operates as a dissolution of the firm. The partners may have no confidence in the assignee, nor may the assignee choose to be concerned in the trade. Now the bill and appointment of a receiver on the application of Smith, is, in equity, equivalent to an actual assignment of the property so far as he could assign it."

And upon this ground it was held that Smith could not, after such an equitable assignment, confess a judgment, so as to give a creditor a priority against the property of the partnership.

Our statute having prohibited these assignments, it results that the possession of the receiver was only of such a character as the Court could invest him within the case made by the bill.   This is not a creditor's bill; for, as we understand the law, a creditor's bill is a suit brought by creditors against executors and administrators to settle an estate.   A New York creditor's bill is the creature of statute, and intended to reach equitable assets, after all legal remedies are exhausted.

The only proceeding at all analogous, is where an administrator institutes a suit against all the creditors, for the purpose of having all their claims adjudicated.   "These suits," says Judge Story in his work on Equity Jurisprudence, section 544, "are not encouraged, because they have a tendency to take away the preference which one creditor may gain over another by his legal diligence.   Besides, it has been said that these bills may be made use of by *executors and administrators* to keep creditors out of their money longer than they otherwise would be."

In the following section, it is said, that upon such a bill, "the Court will not interpose, by way of injunction, to prohibit creditors proceeding at law, until there has been a decree against the executor or administrator to account in that suit, for otherwise the latter might, without reason, make it a ground of undue delay of the creditors."

In the case before us, the creditors are not parties.   It is not an administrator's bill against creditors, nor a creditor's bill seeking equitable offsets.   It is a suit between the members of the partnership, and, until a decree of dissolution, the plaintiff is *dominus litis*, and may deal with it as he pleases.   The cases of Warring v. Robinson et al., 1 Hoffman Ch. R., and Williamson v. Wilson, 1 Bland Ch. R., do not sustain the respondents' position. In the first case, the Vice-Chancellor remarks, that in the case of Pratt v. Robinson, he had decided, that a judgment obtained before decree of dissolution had priority.   Again, he remarks : " Prior to the decree, by analogy to a suit for the administration of the assets of a deceased person, no creditor could be restrained from proceeding at law."

The whole case distinctly recognizes the principle contended for by the appellant, and the decision seems to have gone off on the ground that the filing of a bill, and the appointment of the receiver, were an equitable assignment, of which the plaintiff had notice.   In the case in Bland, the Chancellor held, that the insolvency of a firm operated a dissolution in itself, and that, upon a bill being filed, stating such insolvency, a receiver would be appointed.   It was stated, in the opinion, that at the time the Court had ordered the creditors to come in and present their accounts, no creditors had acquired any priority.   But it is not decided that a creditor could not have got an advantage previous to the order for the creditors to come in and have distribution.

Whether insolvency would, of itself, work a dissolution so as to enable a Court immediately to proceed with the equitable distribution of the assets, is a proposition which it is not necessary to decide, as there is no such allegation in the bill.   These cases, together with the leading authorities on this subject, have been so fully examined by Burnett, J., in the case of Adams & Co. *v.* Hackett & Casserly, January Term, that further comment is deemed unnecessary, and his conclusions upon this branch of the case are adopted.

From this, it must necessarily result that the intervenors, having acquired a lien upon the property of Adams & Co. by attachment and judgment, prior to the decree of dissolution, are entitled to the fruits of their judgment, and must be first paid.

It is contended that this question was substantially decided in the case of Adams *v.* Woods, Haskell, and others.   I do not so understand that decision.   The simple question involved in the case was, whether the Court could compel parties who were the custodians of a fund which they had received from the Court, to pay the same over to an officer or receiver of the Court.   In that case, the parties claimed the fund, on the ground that it had been attached in their hands, and that they might be made ultimately liable therefor; but this Court held that no liability would attach on their part, and that, having received the money by order of the Court, they could not be allowed to deny its authority over it.   It was a proceeding between the Court and its officer, to which the appellants were not parties, and all that was said by this Court, with reference to the power of the Court below to seize the assets for the purposes of equitable distribution, may be regarded as mere *dictum*, as the point was neither involved nor discussed.   Even if we were wrong in this, the appellant alleges that the whole proceeding is void, under the provisions of the twentieth section of the act concerning fraudulent conveyances, and his bill shows a state of facts which, if true, would vitiate it. For the purpose of this investigation, it makes no difference whether he obtained his judgment before the decree of dissolution ; for, if the proceeding was instituted for the purpose of hindering, delaying, or defrauding creditors, it may be attacked, on that ground, any time before a final distribution of the assets.

Judgment reversed, and cause remanded.