## JAMES A. JACKSON *et al.*

*v.*

## EUGENE H. LAHEE, Receiver.

*Filed at Ottawa June 13, 1885.*

| 114 | 287 |
| 37a | 461 |
| 114 | 287 |
| 140 | 558 |
| 40a | 388 |
| 40a | 663 |
| 41a | 295 |
| 114 | 287 |
| 45a | 51 |
| 114 | 287 |
| d91a | 296 |
| 114 | 287 |
| 93a | 136 |

1.  JUDGMENT LIEN—*as to property in the hands of a receiver.* The recovery of a judgment against partners after the appointment of a receiver to take charge of the firm assets for the benefit of the firm creditors generally, creates no lien against any property or funds of the firm in the hands of the receiver. Such property or funds can not be levied on by an execution, or reached by garnishment, for the reason of its being in the custody of the law.

2.  RECEIVER—*how far assets in the hands of a receiver are beyond the control of the parties, or of creditors—and herein, of creditors obtaining priority over each other.* The possession of a receiver, as an officer of the court, is the custody of the law, and he holds the property or funds for the benefit of the party or parties whom the court shall find entitled thereto; and the law will not permit the receiver's possession to be disturbed, without the consent of the court that first obtained jurisdiction to appoint him.

3.  Where a receiver has been appointed on a bill filed by one partner against his co-partner, merely to hold the property or funds pending the litigation between the parties, creditors of the firm are not bound to wait till the equities between the parties may be adjusted, as that might never be done. In such case the assets are treated as still belonging to the firm, and creditors may proceed in any lawful way to acquire a lien entitling them to priority over less diligent creditors.

4.  A receiver was appointed on bill filed by one partner against the other for the settlement and adjustment of the partnership accounts and the payment of creditors of the firm, which was insolvent, and the court had ordered notice to be given to all creditors to come in and prove their debts before the master. It was *held*, that one of the creditors, by the recovery of a judgment against the firm during the pendency of said bill, and the filing of a creditor's bill on the same day that notice to creditors was ordered, did not acquire any lien upon the assets in the hands of the receiver, or right to be preferred over other creditors,—and this more especially when such creditor proved his claim before the master, and shared in the distribution of the funds in his hands.

5.  And where, in such case, the defendant partner appeared, and consented to the appointment of a receiver, who took possession of all the effects of the firm, it was *held*, that this was equivalent to placing the assets of the firm, by the voluntary act of the parties, under the control of the court for the benefit

of their creditors, generally, and that after the court had assumed jurisdiction the parties would not have been allowed to dismiss the suit.

6. SAME—*estoppel of creditor to claim priority, inconsistently with former acts.* Where a creditor of a firm obtained judgment after the appointment of a receiver, on a bill between the partners, and proved his judgment before the master in pursuance of an order of the court authorizing the same, and filed his petition to prevent the partners from dismissing their suit and discharging the receiver, and contested other claims presented before the master, and received his *pro rata* share of a dividend ordered to be paid by the receiver, it was *held,* that these acts estopped such judgment creditor from claiming priority over other creditors in the final distribution of the assets.

APPEAL from the Appellate Court for the First District;— heard in that court on appeal from the Circuit Court of Cook county; the Hon. M. F. TULEY, Judge, presiding.

Messrs. MONK & ELLIOTT, for the appellants:

A creditor, by obtaining a judgment and the filing a creditor's bill, acquires an equitable lien. The filing of the bill operates as an attachment of all property which can not be levied upon at law. *First National Bank* v. *Gage,* 93 Ill. 173; *Corning* v. *White,* 2 Paige's Ch. 567; *Weed* v. *Price,* 9 Cow. 928; *Edmeston* v. *Lyde,* 1 Paige, 639; *Eager* v. *Price,* 2 id. 333; *Clarkson* v. *DePeyster,* 3 id. 320; *Insurance Co.* v. *Power,* 3 id. 365.

As to what is the commencement of a suit as between the parties, see *Lowry* v. *Lawrence,* 1 Caine, 61; *Chatham* v. *Lewis,* 2 Johns. 42; *Fowler* v. *Sharp,* 15 id. 323; *Badger* v. *Finney,* 15 Mass. 859; *Harris* v. *Dennis,* 1 S. & R. 236; *Carpenter* v. *Butterfield,* 3 Johns. Ch. 145; *Hogan* v. *Cuyler,* 8 Conn. 203.

Under a bill filed by one partner against his co-partner for the adjustment of the partnership affairs between themselves, the appointment of a receiver by consent does not prevent a creditor from taking adverse proceedings, and thereby acquiring a lien. *Coates* v. *Cunningham,* 80 Ill. 467; *Howell* v. *Ripley,* 10 Paige, 43; *Burrill* v. *Leslie,* 6 id. 45; *Banks* v. *Potter,* 21 How. 467; *Waring* v. *Robinson,* 1 Hoff. Ch. 524; *Ellicott* v. *Insurance Co.* 7 Gill, 307; *Adams* v. *Hackett,* 7 Cal.

187; *Adams* v. *Wood,* 8 id. 152; *Adams* v. *Haskell,* 9 id. 24; *Ross* v. *Titsworth,* 37 N. J. Eq. 333; *Holmes* v. *McDowell,* 15 Hun, 585.

Appellants were not estopped from asserting their lien by accepting a *pro rata* distribution of the funds in the receiver's hands. *Lanahan* v. *Latrobe,* 7 Md. 278.

By their creditor's bill appellants acquired, not a right to a lien, nor a mere right to priority out of the general assets, but an actual, specific lien, which could only be defeated by satisfaction of the judgment or a successful defence of the suit. *Weed* v. *Price,* 9 Cow. 7; *Edmeston* v. *Lyde,* 1 Paige, 639; *Eager* v. *Price,* 2 id. 333; *Corning* v. *White,* 2 id. 567; *Clarkson* v. *DePeyster,* 3 id. 320; *Insurance Co.* v. *Power,* id. 365.

The assets of the firm are legal—not equitable—assets. Adams' Eq. *252, 254; 2 Leading Cases in Eq. pt. 1, p. 384.

. Mr. I. K. BOYESON, for the appellee:

The appointment of a receiver placed the co-partnership property in the hands of the law, and no creditor could get a preference by obtaining a judgment subsequent to the appointment of the receiver. High on Receivers, 334, 345, 361; *Holmes* v. *McDowell,* 15 Hun, 585; 76 N. Y. 585; *Law* v. *Ford,* 2 Paige, 310; *Rutter* v. *Tallis,* 5 Sandf. 611; *Marr* v. *Bank,* 4 Cold. 471; *Van Alstine* v. *Cook,* 25 N. Y. 489.

The appointment of a receiver places the property *in custodia legis. Nicoll* v. *Boyd,* 90 N. Y. 519; *Temper* v. *Brooks,* 40 Mich. 333; *Maynard* v. *Bond,* 67 Mo. 315; Wait on Fraudulent Conveyance, 183, 261.

The title of the receiver relates back to the order appointing him. High on Receivers, 93; *Maynard* v. *Bond,* 67 Mo. 315; *Rutter* v. *Tallis,* 5 Sandf. 611; *Ex parte Evans,* L. R. Ch. Div. 260.

Appellants are estopped by proving under the receivership and participating in proceedings before the master. Bigelow

on Estoppel, 503; 2 Leading Cases in Eq. 139, 141; Am. Leading Cases, (1 Hare & Wall.) 556; *Rapallee* v. *Hewart*, 27 N. Y. 312; *Rodermund* v. *Clark*, 46 id. 354; *Howes* v. *Henriques*, 13 Wend. 243; *Irwin* v. *Tabb*, 17 S. & R. 419; *Adlum* v. *Yard*, 1 Rawle, 163; *Jones* v. *Norsey*, 4 Md. 306; *Lanahan* v. *Latrobe*, 7 id. 268.

The assets in the hands of the receiver being equitable assets, which appellants could only reach through a court of equity, they must pay the price of equitable assistance, which always is, that they share *pari passu*. *Silk* v. *Prine*, 2 L. C. in Eq. 358; *Purdy* v. *Doyle*, 1 Paige's Ch. 558; *Benton* v. *Le Roy*, 4 Johns. Ch. 651; *Washburn* v. *Bank*, 19 Vt. 278; *Jones* v. *Lackland*, 2 Gratt. 87.

Mr. Justice Scott delivered the opinion of the Court:

On the 26th day of April, 1883, Samuel H. Richardson filed a bill in the circuit court, against Truman B. Handy, in which it is alleged the partnership that had previously existed between them was not formed for any specified length of time; that the affairs of the firm had become disordered and embarrassed, and no longer profitable, and that complainant had elected to terminate the partnership; that various parties had instituted suits against complainant and defendant, and that there was danger of the firm assets being wasted by litigation; that the assets of the firm consisted mostly of open accounts and evidences of indebtedness, and office furniture. The prayer of the bill is for the appointment of a receiver to take charge of and collect and preserve the assets, that the cause be referred to a master to take an account between complainant and defendant, and that on final hearing a decree be entered according to the equities existing between complainant and defendant. On the same day, defendant, by stipulation in writing, entered his appearance in the court, waived service of process, and consented to the appointment of a

receiver, which was done. Afterwards, on the 31st day of May, 1883, on motion, the cause was referred to the master in chancery to take proof of all claims against the firm, and it was by the court ordered that all persons having claims against such firm should present the same before the master for allowance by a day fixed, and that the master give the usual notice to all creditors. Under this order the creditors,—among whom are the petitioners in this case,—came before the master and proved up their claims against the assets of the firm in the hands of the receiver. When the court made its order calling the creditors before the master, the receiver had previously collected, and had then in his hands, the sum of $20,274.31. That sum constituted most of the assets to be distributed. Since then a further sum, less than $5000, has been collected by the receiver. The usual steps were being taken as rapidly as was practicable to close up the partnership affairs and pay the creditors.

On the 5th day of May, 1883, petitioners commenced an action in assumpsit in the circuit court against the firm of Handy, Richardson & Co. Service was had on both defendants, and on the 23d day of the same month judgment was rendered against them by default, for the sum of $9052.12, on which execution was issued on the 25th of the same month, and placed in the hands of the sheriff. On the 29th day of the same month the sheriff made return on the execution, he had made demand on Richardson for property; that he failed or refused to deliver any in satisfaction of the execution; that Handy could not be found so that demand could be made on him, and that he made return of the execution by order of petitioners' attorney, which was as follows: "The sheriff will return the execution in the above case forthwith no property found, no part satisfied.—May 29, 1883." Two days thereafter,—that is, on the 31st day of May,—petitioners filed the usual creditors' bill, in which was set forth the recovery of their judgment against Richardson and Handy,

the issuing of the execution thereon, and the return of the sheriff no property found and no part satisfied, and concluding with the prayer that defendants may be required to answer, and for a discovery of property to be subjected to the payment of the execution. Service of process was had on Richardson on the same day the bill was filed, but Handy was not found. Richardson answered the bill, and disclaimed having any property subject to execution, and averred that he had turned over all his property to the receiver, and that no debts were due him or the firm other than those already in the hands of the receiver. Afterwards Handy was brought into court by publication, and nothing further seems to have been done in this case, except on the 13th of July an order was entered extending the receivership to this suit, and that assets in the hands of the receiver, or thereafter to be received by him, be held for the benefit of all parties to both suits, to be disposed of under the direction of the court.

Turning back, now, to learn what was done in the original suit, it is seen that on the 5th day of July, 1883, an order was entered granting leave to the present petitioners to file a petition praying that complainant and defendant in the original suit be not allowed to dismiss their suit, or the receiver be discharged. On the 6th day of the same month the time for filing claims before the master was extended to the August term, 1883, and it was ordered that the master mail notice to all persons appearing on the books of the firm to be creditors, and who had not then come forward and filed their claims. Other parties were allowed to file intervening petitions, and other orders were made, but it is not necessary to an understanding of the case to state them.

It appears from the report of the master, that divers claims were filed before him in June, 1883; that on the 29th day of the same month petitioners filed their claim before him, and for greater certainty referred to the judgments that had been previously obtained by them against the firm, and that in

the proceedings on proof of claims petitioners had taken an active part, and had contested a large number, but not all, the claims presented. It also appears that at the date of the filing of the original bill in this suit, Handy, Richardson & Co. were in fact insolvent, and that numerous creditors of the firm had commenced, and others were about to commence, suits against them. On the 28th day of January, 1884, petitioners were, by the court, granted leave to file their petition herein, instanter, in the original cause, for priority over other creditors participating in the assets in the hands of the receiver, which they did. In their petition they set forth the recovery of the judgment against the firm of Handy, Richardson & Co., the issuing of the execution on such judgment, and the return of the sheriff no part satisfied; that on the 31st day of May, 1883, they filed their creditors' bill, making both partners defendants; that service of process was duly had on Richardson, and the other defendant having ceased to be a resident of the State, service was had on him by publication; that in July, 1883, they filed with the master, to whom the reference had been made to take proof of claims, their claim, and made proof of the same; that they had received no part of it, and that it had been allowed by the master and approved by the court. It is further stated no decree was entered in the original cause declaring the partnership dissolved, or for an accounting, or for the application of the partnership assets to the partnership debts, until after the bringing of their creditors' bill, and not until after petitioners had asserted a priority to the assets in the receiver's hands, and had obtained an extension of the receivership to their creditors' suit. The prayer is, that petitioners' creditors' bill may be declared to have created a lien on all the assets of the firm, and to have entitled them to priority, to the extent of their judgment, over other creditors. The receiver, by his answer to this petition, admitted the commencement of the original suit April 26, 1883, in which

he was appointed receiver, and averred that in the bill it was alleged the estate was embarrassed; that the firm existed only during the pleasure of the parties; that complainant in the original bill elected to dissolve the partnership, and that on the 31st day of May, 1883, the cause was referred to a master to take proof of claim, and thereafter a decree was entered declaring the firm insolvent, and the receiver insisted such decree relates back to the date of his appointment.

It is on the claim made for priority of payment of petitioners' judgment out of funds in the hands of the receiver, to the exclusion of other equally meritorious creditors of the failing debtors, that the controversy in this case arises. It will be noticed it is not claimed petitioners acquired any lien on the firm assets by the commencement and prosecution of the action at law against the debtor firm; but if such lien were insisted on, it is obvious it would have nothing in its support. Neither partner had any property subject to execution, nor did the firm have any assets other than what were in the hands of the receiver. It is plain the funds could not be levied on by an execution at law, nor could the same be reached by garnishment in the hands of the receiver, for the simple reason the assets were *in custodia legis.* It is only insisted petitioners' creditors' bill shall be declared to have created a lien on all the assets of the firm, and to have entitled them to priority of payment of their judgment against the firm debtors over their other creditors. On what principle consistent with equity and good conscience this can be done, is not readily perceived. It is certainly not upon the principle a diligent creditor is rewarded for his superior diligence in discovering assets that would not otherwise have been brought to light. There can be no pretence in this case that petitioners filed their creditors' bill with a view to discover assets other than those in the hands of the receiver. It is inconceivable the bill in this case was exhibited with any hope or expectation, founded in good faith, other assets

would be discovered. It would be absurd to claim that funds in the hands of a receiver, to be administered under the direction of the court, could be discovered, in the sense that term is used in the books, for which a creditor should be rewarded as for superior diligence. If the bill in this case is to be sustained at all, it must be upon some other ground, and for some other reason.

It is conceded the funds in this case were in the hands of a receiver when petitioners filed their creditors' bill, and that the same were not subject to levy at law. The receiver is a mere officer of the court, and his possession is the custody of the law. The property or funds were in the hands of the receiver for the benefit of the party ultimately entitled to them, and when he is discovered or ascertained, the receiver will be considered his receiver. The law will not permit that possession to be disturbed without the consent of the court that first obtained jurisdiction to appoint the receiver. It would seem an anomaly that a lien adverse to the rights of the receiver could be obtained, so as to control the distribution to be made. Obtaining a lien implies it may ultimately take the property or funds to which it attaches, and if that could be done in this case it would withdraw the same from the custody of the law, or from, what is the same thing, the custody of the receiver having the same in possession. There are cases that seem to hold something akin to this may be done, but they are mostly cases where the receiver has been appointed on a bill filed by one partner against his co-partner, and where the receiver is appointed to hold the property or funds pending such litigation. In such cases creditors are not bound to wait until the equities between the parties may be adjusted. That might never be done, or the proceeding might be dismissed and the receiver discharged. The assets in such cases are treated as still belonging to the firm, and the creditors may proceed in any way that may lawfully be done to acquire a lien, which would no doubt entitle them to

priority over less diligent creditors. The cases are rare that permit this practice. The better rule is, as stated in *Waring* v. *Robinson*, 1 Hoff. Ch. 524, that although it is in the power of the partner who has filed such a bill, to dismiss it at any time before decree, and probably discharge the receiver, yet until he does so it must be treated as an equitable assignment of the property for all the creditors. The same general doctrine was declared in *Holmes* v. *McDowell*, 15 Hun, 585, which case was afterwards affirmed in 76 N. Y. 596, on the grounds stated in the prevailing opinion of the judges concurring. That was a case commenced by one partner against his co-partner to adjust the affairs of the partnership, which was insolvent, and to distribute the assets equally among their creditors, and where a receiver was appointed by stipulation. After that suit was instituted and the receiver appointed, and during the pendency of the suit, other actions were brought against the firm by other creditors, and judgments recovered. Afterwards, in supplementary proceedings, the receivership was extended to the latter actions, and on the application of the plaintiffs in the creditors' action, to have the receiver directed to pay their claims out of the assets in his hands, it was decided the judgments recovered by the plaintiffs gave them no priority over other creditors. The decision proceeds on the theory that that which was done by the partners in causing the receiver to be appointed, was, in effect, an assignment of the partnership assets for the benefit of their creditors, to be administered by the court, or under its direction; that the owners of the partnership property had, by their voluntary act, placed it in the hands of the court for equal distribution, and that the court had assumed jurisdiction over it for that purpose. This doctrine finds support in the principles declared in the following cases, although not so definitely stated: *Law* v. *Ford*, 2 Paige, 310; *Van Alstine* v. *Cook*, 25 N. Y. 489; *Maynard* v. *Bond*, 65 Mo. 315.

In *Ross* v. *Titsworth,* 37 N. J. Eq. 333, it was ruled that where creditors recovered judgments against partners after the filing of a bill by one partner against the other for settlement of the co-partnership, and obtained execution thereon before any decree of dissolution and call for creditors, though after the appointment of a receiver by consent, they were entitled to the benefit of their liens. So in *Ellicott* v. *United States Ins. Co.* 7 Gill, (Md.) 307, it was declared that where the decree appointing a receiver and awarding an injunction did not state the ulterior intent of the court was to make an equitable distribution of the fund, and contained no direction to the receiver to give notice to the creditors to file their claims, such decree imposed no restriction upon creditors in prosecuting their claims, either at law or in equity, and a judgment thereafter obtained by a creditor was as much a lien on the real estate of defendant as if the appointment of a receiver had never been made. But if the court had stated in its decree the object of placing the effects of defendants in the hands of the receiver to have been that it might make an equitable distribution among creditors, and had directed the usual notice to creditors to come in and file their claims, then it was said creditors commencing a suit at law might be enjoined from prosecuting it; and if no such application was made by any one interested, the court would regard the judgment, if obtained, as an unwarrantable interference with the jurisdiction it had assumed, and rejected it as a lien on the property in the hands of the receiver. In *Adams* v. *Hackett,* 7 Cal. 187, one of the concurring judges held, in a case where one partner has filed a bill for a dissolution of the partnership and the appointment of a receiver, that until a dissolution has been pronounced by the court, and an order upon the receiver to make an equal distribution of the assets among creditors, a creditor is not prevented from resorting to adverse proceedings, and in that way obtain preference, while the other concurring judge was of opinion a fund in the

possession of the receiver can only be distributed by order of the court in whose custody it is, and no party can, by an adverse proceeding, acquire a lien on such funds. In *Adams* v. *Wood*, 8 Cal. 152, it was decided, among other things, a bill for a dissolution of a partnership and the appointment of a receiver can not operate as an assignment for the benefit of creditors, so as to prevent a creditor from acquiring a legal priority, for the reason all such assignments, excepting in insolvency, were void under a statute of that State. The case of *Adams* v. *Wood*, 9 Cal. 24, seems to follow the decision of *Adams* v. *Wood*, last above cited, and is based definitely upon a statute of that State, which provides: "No assignment of any insolvent debtor, otherwise than is provided in this act, shall be legal or binding on creditors."

It will thus be seen from this brief reference to cases, the present case is not within the principle of the strongest case in support of the position taken by petitioners. The utmost petitioners could claim, in any event, would be, they might, at any time before the creditors should be called, acquire a lien, by judgment at law or decree in chancery, which would give them a priority in the distribution of the assets in the hands of the receiver. Without conceding the position taken has the weight of authority or even any equitable consideration for its support, it may be said the case being considered can hardly be brought under the control of the principle insisted upon. It is conceded petitioners' judgment at law against the partners gave them no lien upon the funds in the hands of the receiver. Did the filing of the creditor's bill give them any such lien as will be recognized in equity? Applying the strictest rules stated in any of the cases cited, no case is made that would entitle petitioners to priority over other creditors. It does not appear their creditors' bill was filed before the creditors were called to go before the master to establish their claims. The order calling the creditors was entered on the 31st day of May, and the petitioners' creditors'

bill was filed on the same day, but which was first, in fact, in order of time, does not appear. The burden of showing facts which would give petitioners priority over other creditors, must, of course, devolve on them, otherwise the claim put forth by them fails. Their creditors' bill was filed in the same court where the proceedings to sequester the assets of the debtor firm were pending, and it is not unreasonable to charge petitioners with notice of what was being done in that case in the same court. It was for them to show that, when their creditors' bill was filed, the court had entered no order directing the creditors to be called before the master to establish their claims. That they have not done. Where substantial justice requires it, courts will inquire when any particular act transpired,—as, for instance, the precise hour when a statute took effect, or when it received the executive approval. If their creditors' bill was, in fact, filed before the court made the order calling the creditors, that fact should have been made to appear from the evidence. No presumption will be indulged that would give petitioners an advantage over other equally meritorious creditors.

It is said that at the time petitioners exhibited their creditors' bill, the partnership affairs were still under the control of the partners, and that they could reconcile their differences and dismiss the suit, and with it, the receiver. That proposition is certainly not correct under any view of the law, unless it appears the creditors' bill was filed before the court directed the receiver to notify creditors to appear before the master and establish their respective claims. It is a matter of no consequence the order may not have been spread at large on the records of the court by the action of the clerk until the next day after it was made. It had been made by the court, and minuted on the record, and that was sufficient. After the entry of that order, it is apprehended the court would not have permitted the partners to dismiss their suit. It had then progressed too far. Creditors had

interests the court had assumed to protect, and its equitable purpose in that regard could not be defeated by the partners. After the entry of that order calling the creditors before the master to whom the cause had been referred, any attempt to enforce payment out of the funds in the hands of the receiver, of any judgment or decree subsequently obtained, would have been deemed an unwarrantable interference with the jurisdiction the court had assumed to exercise, and the priority insisted upon under any such pretended lien would have been rejected. The original bill filed by one partner represented to the court the affairs of the firm had become disordered and embarrassed, that various parties had instituted suits against the firm, and that there was danger of the assets being wasted by litigation, and asked the court to appoint a receiver according to the practice in such cases. The other partner came in and consented to the appointment of a receiver, which was done. That was equivalent to placing the assets of the firm, by the voluntary act of the parties, under the control of the court for the benefit of their creditors. The court had taken jurisdiction, and was moving as fast as was practicable, to close up the partnership matter, and distribute the assets to whomsoever they should appear to belong. In a little more than one month from the time the bill was filed, the court had both partners before it, and had so far progressed as to refer the cause to the master, and to direct notice to be given to all creditors to come before him to make proof of their claims. After all this was done—for it does not appear the creditors' bill was filed before the general creditors were called—it would be inequitable to permit petitioners to obtain priority over other creditors simply by the filing of a creditors' bill, when it was apparent the court was proceeding with all convenient speed to make a distribution of the assets in the hands of its receiver, among the creditors. The haste with which the creditors' bill was filed after the judgment at law was obtained, would seem to

indicate it was a mere contrivance to be used to secure priority over other creditors, to the assets the court had assumed jurisdiction to distribute, and which it was proceeding to do. Equity will not lend petitioners its aid to accomplish any such result, and without such aid the pretended lien could never be made available.

But aside from this view, petitioners came in with other creditors and proved their claim before the master, and contested claims of other creditors. This could only be done by parties entitled to share in the final distribution to be made, otherwise it would have been mere officious intermeddling. Shortly after the court had referred the cause to the master to take proofs of claims, petitioners obtained leave of the court to file a petition to prevent the partners from dismissing their suit and discharging the receiver. This may have been, and perhaps was, unnecessary at that stage of the proceedings, but it tends to show petitioners had submitted to the jurisdiction of the court in the matter of the distribution. The sequel shows that when a dividend was ordered to be paid by the receiver, petitioners received their *pro rata* share. These are considerations that ought to have estopped them from claiming priority over other creditors in the final distribution of the assets. Had they intended to insist on the priority obtained by filing their creditors' bill, there was no occasion for intermeddling with the proceedings before the master, causing large expenses, which could only be paid out of the only fund available for the payment of their claims.

In no view that can be taken are petitioners entitled to priority over other creditors, and the judgment of the Appellate Court must be affirmed.

*Judgment affirmed.*