JOSEPH STEPHEN AND UZIAH MACK

v.

FERDINAND H. REIBLING ET AL.

*Mortgages—Rent of Mortgaged Premises—Receiver in Foreclosure Suit Entitled Thereto—Claim of Judgment Creditor of Mortgagor Overruled.*

In the case at bar the beneficiaries under a trust deed acquired an equitable lien upon the rent of a portion of the mortgaged premises, which had been leased by the mortgagor, by virtue of the appointment of a receiver in a suit brought to foreclose the trust deed, and the right which the mortgagor had to collect the rent from his lessee passed to the receiver as soon as he was appointed and qualified and had notified the lessee; so held as against the claim of judgment creditors of the mortgagor who had filed a bill to subject the rent to the satisfaction of their judgment.

[Opinion filed May 20, 1892.]

APPEAL from the Circuit Court of Will County; the Hon. DORRANCE DIBELL, Judge, presiding.

On March 3, 1883, Ferdinand H. Reibling executed his fifteen promissory notes of that date, each for the principal sum of $1,000, payable to the order of himself; and to secure the payment of the same said Reibling and wife executed to Edward C. Hagar, as trustee, their deed of trust of that date, upon the following described real estate and property, viz.: "Lots three (3), four (4) and five (5), in block thirty-six (36), and one (1), two (2) and three (3), in block thirty-seven (37), in that part of the city of Joliet known and platted as North Joliet, including the buildings, machinery, fixtures and appurtenances contained in, belonging to, and comprising the paper mill thereon situate, known as the Des Plaines River Paper Mill." Reibling was the owner of all the property covered by the trust deed except lots 2 and 3 in block 37, which he held under a lease from one George W. Hyde, the owner thereof, of date August 1, 1881, which lease granted said Reibling, in addition to said lots, "water and water power not to exceed in capacity 150 horse power, to be taken out of the canal basin at Joliet, Will County and State of Illinois, above and adjoining dam number one of the Illinois and Michigan Canal at or near lots 2 and 3, in block 37, North Joliet." The notes secured by said trust deed became the property of the First National Bank of Joliet, Maria E. Dillman and Robert Pilcher, and not being paid, judgments were recovered

March 15, 1886, on the notes held by the First National Bank of Joliet, and executions issued thereon, and on July 2, 1886, Robert Pilcher filed in the Circuit Court of Will County a bill to foreclose said trust deed to Hagar, making Reibling and wife, First National Bank of Joliet, and others, parties defendant. On February 7, 1887, upon proceedings had in said cause, said Edward C. Hagar was appointed receiver of all said mortgaged property and of "all other property and property rights" of said Reibling, and he duly qualified and entered upon the discharge of his duties as such receiver. On February 8, 1887, Hagar, as receiver, leased to said Robert Pilcher "the said Des Plaines River Paper Mill with the machinery and appur-. tenances thereto, by the month, at the rental of $150 per month." June 28, 1888, a decree of foreclosure was entered in said cause, and the property covered by said deed .of trust ordered sold to pay the amount (over $18,000) then due the holders of said notes; and thereafter and on the 18th day of August, 1888, said premises were sold to the First National Bank of Joliet, for $10,500, and on October 2, 1888, an order of distribution was entered directing the payment of said amount after the payment of costs to Robert Pilcher, First National Bank of Joliet, and George S. House as trustee for Maria E. Dillman, to apply upon the amount due them respectively under said deed of trust as found in said decree of June 28, 1888. On November 25, 1889, the master in chancery duly conveyed said premises to the First National Bank of Joliet.

On one of the lots leased by Reibling from Hyde was a flume leading from the upper basin of the canal and discharging into a race back of the Des Plaines River Paper Mill property. In this flume were three turbine wheels, two of which wheels were used to furnish the power to run the paper mill and were about four feet apart and placed just outside the paper mill. The remaining wheel was about six feet from the others and was not so constructed that it could be used in connection with the paper mill. An upright shaft was set above this wheel, and upon that a large

wheel was placed and gearing connected therewith, and from that an iron cable conducted the power derived from this wheel to the manufactory of the Joliet Strowbridge Company, which was located about 208 feet south from the Des Plaines River Paper Mill, where the power was used to propel its machinery. The Joliet Strowbridge Company had been using this power for a number of years under an oral arrangement with Reibling by which it was to have all the power from that wheel for as long a period as it wished, at a rental of $20 per month, payable monthly. Under that arrangement it paid rent in full to Reibling up to November 5, 1887. At the time Hagar was appointed receiver, the Joliet Strowbridge Company was using the power furnished· by this third wheel, and have continued using it to the present time. It was not made a party defendant to the foreclosure suit of Pilcher v. Reibling et al. Some time in the fall of 1887, Hagar notified the Joliet Strowbridge Company that they must not pay the rent to Reibling except at their peril, and about the same time Pilcher notified the Strowbridge Company to the same effect; and thereupon that company ceased paying rent and now owes rent at the rate of $20 per month from November 5, 1887.

On March 20, 1886, appellant Mack recovered a judgment for $141 and costs against Reibling, and on March 27, 1886, appellant Stephen recovered a judgment for $200 and costs against the same party, both judgments being recovered before a justice of the peace. Executions issued on said judgments and were returned *nulla bona*, and on January 17, 1890, transcripts of said judgments and executions were filed in the office of the clerk of the Circuit Court of Will County, and executions issued thereon, which were thereafter, and on the 18th day of January, 1890, returned *nulla bona* by the sheriff of Will County. Thereupon, on January 20, 1890, said Stephen and Mack filed a creditor's bill against the Joliet Strowbridge Company and others to obtain satisfaction of their said judgments from these rents owing by the Joliet Strowbridge Company. Answers were

filed by all the defendants except Reibling, and the Joliet Strowbridge Company filed a cross-bill in the nature of a bill of interpleader, setting up these facts and making Stephen, Mack, Pilcher, Nagar and First National Bank of Joliet defendants, and praying that they be required to interplead and establish their rights to said rent. These parties all answered the cross-bill, and upon hearing had, the Circuit Court on June 27, 1891, by its decree ordered: First, "that the original bill be dismissed for want of equity;" second, "that the amount due by the said Joliet Strowbridge Company for rent as aforesaid, for the use of said water power from November 5, 1887, to November 25, 1889, the date of said deed to said First National Bank of Joliet, is the sum of $492, against which sum the costs taxed herein under the cross-bill of said Joliet Strowbridge Company shall be charged and shall be paid by said Joliet Strowbridge Company, and the balance of said sum shall be paid over by it to the said Edward C. Hagar, as the receiver in said foreclosure suit of Pilcher v. Reibling et al., to be therein duly disposed of as the court shall order; that the amount due as rent from said Joliet Strowbridge Company for the use of said water power from the 25th day of November, 1889, to the date of this decree, is the sum of $380, which sum or rents said Joliet Strowbridge Company is ordered to pay also to the said receiver, and from the date of this decree to attorn to him as such receiver, as his tenant, until otherwise ordered by the court in foreclosure suit;" and third, "that said receiver hold all of said rents so paid him by the said Joliet Stowbridge Company, subject to the order and direction of the court in said foreclosure suit of Pilcher v. Reibling et al.; that all the rights and claim thereto, of and as between the said receiver as such, and the said First National Bank of Joliet and the said Pilcher, be determined without prejudice in said suit, as the court shall therein direct and order on such proofs and showing as may then and there be presented and made." From that decree appellants prosecute this appeal.

Messrs. HILL, HAVEN & HILL, for appellants.

These rents due from the Joliet Strowbridge Company on this oral lease with Reibling, constituted and were an equitable asset or chose in action of Reibling, and we do not apprehend that counsel for appellees will dispute the proposition that a party by filing a creditor's bill and the service of process of summons, obtains an equitable lien upon all the equitable assets of the judgment debtor in the hands of the defendant to the bill. This proposition of law has been repeatedly announced by our Supreme Court in King v. Goodwin, 130 Ill. 102, and other cases.

That being the undoubted law, appellants, by filing their bill in this case, based on valid and existing judgments, and having summons served on the Joliet Strowbridge Company, acquired an equitable lien or levy upon these rents; whether that lien or levy would avail them or not, depending, of course, upon whether any other party had a prior existing legal lien thereon.

Hagar's claim to these rents is based upon his appointment as receiver in the case of Pilcher v. Reibling et al., which was a proceeding brought to foreclose a deed of trust given by Reibling to Hagar as trustee. That trust deed was dated March 3, 1883, and covered " Lots three (3), four (4) and five (5) in block thirty-six (36), and one (1), two (2) and three (3) in block thirty-seven (37), in that part of the city of Joliet known and platted as North Joliet, including the buildings, machinery, fixtures and appurtenances contained in, belonging to, and comprising the paper mill thereon situate, and known as the Des Plaines River Paper Mill." By that deed of trust the beneficiaries thereunder acquired no lien or claim to the rents and profits of said premises and property thereby conveyed. The courts of this State treat a mortgage as a mere security for the payment of the debt and the mortgagor as the real beneficial owner of the land, subject to the incumbrance of the mortgage, and hold that the interest of the mortgagee is simply a lien rather than an estate; and while the mortgagor is left in possession he may occupy and improve the same, or he may take the rents and profits to his own use in the

same manner as before he made the mortgage, and he is not accountable for them to the mortgagee before he is entitled to them under his decree. Barrett v. Hinckley, 124 Ill. 32;. 1 Jones on Mortgages, Secs. 667, 771, 772; M. V. R. R. Co. v. Express Co., 81 Ill. 534; Silverman v. Northwestern Mutual Life Ins. Co., 5 Ill. App. 124.

In the case of Silverman v. Ins. Co., *supra*, after announcing the above rule, the court add (citing from 1 Jones on Mortgages, Sec. 667): "The commencement of an action against him by the mortgagee to recover possession, does not change his right in this respect, and he is not accountable for the rents and profits accruing afterward and before the mortgagee is entitled to possession under the judgment. If the mortgagee wishes to receive the rents and profits, he must take early means to obtain possession."

But after foreclosure and deed made, the accruing rents pass to the grantee. Epley v. Eubanks, 11 Ill. App. 272; Foote v. Overman, 22 Ill. App. 181.

Chancellor Kent, in 4 Kent's Com., 157, states the modern doctrine as follows: "The mortgagor has a right to lease, sell, and in every respect to deal with the mortgaged premises as owner so long as he is permitted to remain in possession, and so long as it is understood and held that every person taking under him, takes subject to all the rights of the mortgagee, unimpaired and unaffected. Nor is he liable for rents, and the mortgagee must recover the possession by regular entry by suit before he can treat the mortgagor or person holding under him as a trespasser." To the same effect see also Teal v. Walker, 111 U. S. 242; American Bridge Co. v. Heidelback, 94 U. S. 798.

It then clearly appears that a mortgagee has no specific lien upon the rents and profits of the mortgaged land and can not recover rent from a tenant of the mortgagor either in law or equity. This rule is subject to the exception that in case of actual entry by the mortgagee, or an attornment by the tenant, the mortgagee can collect after condition broken. There is no privity of contract or estate between the mortgagee and the tenant, and until actual entry or at-

tornment, the mortgagee can maintain no action against the tenant either for rent or use and occupation.  1 Jones on Mortgages, Sec. 773–5–7; 2 Wash. on Real Prop., 143; 4 Kent's Com., *165; Gartside v. Outley, 58 Ill. 210; Bartlett v. Hitchcock, 10 Ill. App. 87; Forlouf v. Bowlin, 29 Ill. App. 471.  In 4 Kent's Com., 165, it is said, speaking of the case where a mortgagor makes a lease after mortgaging the property:  "It is admitted that the mortgagee can not distrain or sue for the rent, because there is no privity of contract, or of estate, between the mortgagee and tenant.  But if the subsequent tenant attorns to the mortgagee after the mortgage has become forfeited, then he becomes his tenant, and is answerable to him for the rent.  *  *  *  It will depend, therefore, upon the act of the tenant, under a lease from the mortgagor subsequent to the mortgage, whether the mortgagee can sustain a suit or distress for the rent prior to his recovery in ejectment."

In Forlouf v. Bowlin, *supra*, the Appellate Court of the Fourth District say:  "It was true that there was condition broken, but there had never been an entry by the grantee in the deed of trust for condition broken, and even the mortgagor is not required to account to the mortgagee for rents and profits while he remains in possession.  Moore v. Titman, 44 Ill. 367.  After condition broken the mortgagee may enter and render his security productive by the reception of the rents and profits.  Id.  But this appellant does not stand in a position that without entry for condition broken or attornment, the appellee would have a right to distrain."

In case the debt secured by the mortgage is defectively secured, the mortgagee may, by obtaining the appointment of a receiver of the rents and profits of the property covered by the mortgage, secure a lien upon such unpaid rents and profits, and in that way a second or third mortgagee may secure a lien prior to the first mortgagee.  1 Jones on Mortgages, Sec. 1536; Lapsy v. Manger, 3 Sandf. Ch. 26; Post v. Dorr, 4 Edw. Ch. 412; Havick v. Ripley, 10 Paige, 43; Astor v. Turner, 11 Paige, 436.

In the case of the appointment of a receiver any tenants in possession may be compelled to attorn to the receiver. If they refuse to attorn, the court may on motion enter an order directing them to do so, although they were not made parties to the suit in the first instance. The appointment of a receiver does not change the title or right of possession of the property, and he acquires no better or greater rights in the property than the insolvent debtor had. 1 Jones on Mortgages, Sec. 1536; Wisconsin F. & M. Ins. Co. Bank v. Manistee Salt L. Co., 77 Mich. 76.

Messrs. BENJAMIN OLIN and A. O. MARSHALL, for appellees.

Even a mortgagee in possession has a right to the rents. After condition broken he "is entitled to receive the rents and profits to be applied on his mortgage debt." Fifield v. Gorton et al., 15 Ill. App. 460.

Any possession taken by the mortgagee with notice to the tenants to pay the rent to him, is sufficient, and entitles him to the rents as against the mortgagor. The mortgagor can not recover for after-accruing rents. 1 Jones on Mortgages, Sec. 775.

Until entry by mortgagee he can not maintain an action for rents against a lessee. His title to rent does not accrue until in possession; then it exists. Ib., Sec. 777.

The beneficiaries under, or persons secured by the trust deed, procured the possession of the mortgaged estate by the receiver and the court. Such possession is the custody of the law. Jackson v. Lahee, 114 Ill. 287; Coal & M. Co. v. Coal & M. Co., 111 Ill. 32.

" Where, upon the maturity of the indebtedness, the security being inadequate, the mortgagee files his bill for a foreclosure and procures the appointment of a receiver, he thereby obtains an equitable lien upon the unpaid rents, and will be entitled thereto to the extent of any deficiency in the security." High on Receivers, Sec. 644.

" As a general rule, to entitle a receiver to sue for and recover rents accruing from property of a debtor over whose estate he is appointed, he must give notice of his appoint-

ment to the tenant, and without such notice he can not maintain an action for rent. The object of the notice is of a two-fold nature; first, to protect the estate from payment to a wrong person, and second, to prevent the tenant from dealing with the former owner in ignorance of the receiver's appointment." High on Receivers, Sec. 624.

"A receiver is the representative of all parties in interest; of the mortgagee, the mortgagor, and all holding under them, and all having rights superior to theirs." Jones on Mortgages, Vol. II, Sec. 1535.

"His possession is the possession of the court, and without its authority no one can interfere directly or indirectly with the property." Id.

"By the appointment of a receiver the mortgagee obtains an equitable claim not only upon the rents and profits actually due at the time, but also upon the rents to accrue; and his right to them is superior to that of any one else claiming under the mortgagor." Jones on Mortgages, Vol. II, Sec. 1536.

Where a receiver is appointed over the property of a judgment debtor, upon the application of his creditors, the debtor is not entitled to interfere with the receipts of rents after the order of appointment is made absolute. McLoughlin v. Longan, 4 Ir. Eq. 325.

"Where a receiver of the rents accruing from real property has been appointed and a decree is subsequently made for a sale of the premises, the receiver will be continued until conveyances are executed, in order to collect arrears of rent, and the tenants will be compelled to pay arrears to the receiver." High on Receivers, Sec. 631.

By the decree in the suit in which Hagar was appointed receiver, he was, on the showing made, ordered to continue in possession and in the discharge of his duties as such receiver pending the time for redemption, etc. Reibling made no objection.

The foregoing authorities, we think, demonstrate that the court below was correct in holding that the receiver, and not appellants, is entitled to the rent in question.

MR. JUSTICE HARKER. The only question to be determined
on this appeal is whether appellants, or Edward C. Hagar as
receiver, are entitled to the rents due from the Joliet Strow-
bridge Company, which accrued between November 15, 1887,
and November 25, 1889, amounting to the sum of $492. The
rents accrued by virtue of a verbal lease of a water wheel
located on premises already mortgaged by the lessor to a
third party. Pending proceedings in chancery to foreclose
the mortgage (deed of trust) Hagar was appointed receiver,
qualified as such, and notified the lessee, the Joliet Strow-
bridge Company, not to pay rent any longer to the lessor.
The rents are for no period of time anterior to his appoint-
ment as receiver. Reibling, the lessor, is insolvent, and the
mortgaged property was sold by the master in chancery
under the foreclosure decree for about $8,000 less than an
amount sufficient to satisfy the decree. Hagar claims that
by virtue of his appointment as receiver he obtained an
equitable lien upon the rents, and is entitled thereto to the
extent of any deficiency in the security. On the other
hand appellants, who hold judgments obtained before a
justice of the peace against Reibling, and are unable to
obtain satisfaction of them by the statutory process of
garnishment, for the reason that the rent debt of the Joliet
Strowbridge Company exceeds the jurisdiction of a justice of
the peace, claim that they are entitled to satisfaction of
their judgment of such rents, upon the ground that they are
equitable assets or choses in action belonging to their judg-
ment debtor, which none of his creditors have subjected to
their claims. Their bill, which they term a creditor's bill, is in
the nature of garnishment in equity, and because of obtain-
ing service of process upon the Joliet Strowbridge Company
before any other creditors, they claim priority as a reward
for their superior diligence. It is a novel proceeding, but
we make no doubt they are entitled to the relief sought un-
less it be determined that the receiver has a prior lien. It
is contended that inasmuch as Hagar had not taken
possession of the water wheel, as the Joliet Strowbridge
Company had never attorned to him nor recognized him as

its landlord, as he had never secured an order compelling it to attorn to him, and had its officers punished for failing to do so, and as he had never taken steps to dispossess it, he had no lien upon the rents.

So far as the relative rights of a mortgagor and mortgagee are concerned, there can be no question on the proposition that while the mortgagor is in possession he may take the rents and profits to his own use, and is not accountable for them even after condition broken.   He is not accountable to the mortgagee for rents after an action has been commenced to foreclose until there is a judgment or decree entitling the mortgagee to possession.   Having no specific lien upon the rents and profits of the mortgaged premises the mortgagee can not ordinarily recover rent from a tenant of the mortgagor.   Before he can do so there must be an actual entry by him or an attornment by the tenant.   The foundation of this rule is that there is no priority of contract or estate between the mortgagee and tenant.   Relying upon that proposition of law counsel for appellants argue that the receiver, under the facts in this case, is not entitled to the rents in question from the Joliet Strowbridge Company. Their theory is based upon the idea that a receiver stands upon the same footing as a mortgagee, asserting a claim to the rents and profits of the mortgaged premises, and they seek to apply to that officer principles applicable to a mortgagee after condition broken.   The chancellor in a suit in equity to foreclose a mortgage is authorized to appoint a receiver because the debt is insufficiently secured.   The receiver thereby obtains an equitable lien upon the unpaid rents, and will be entitled thereto to the extent of any deficiency in the security.   High on Receivers, 644.   He is the representative of all parties in interest, the mortgagee, the mortgagor, and all holding under them.   His possession is the possession of the court, and without its authority no one can interfere with the property.   Jones on Mortgages, Vol. 11, 1535 and 1536; Jackson v. Lahee, 114 Ill. 287.   When the court ascertains that the circumstances warrant the appointment of a receiver, and one is appointed and qualified,

then the premises pass into the custody of the court. Hence, the receiver is not in the position of a mortgagee after condition broken, whether such mortgagee is in posses sion or not. Counsel for appellants concede that after a receiver is appointed and qualifies, tenants in possession may be compelled to attorn to him or be ejected. Upon what ground has the receiver such right, except upon the ground that the court has taken control of the property and placed him in supervision of it. By virtue of Hagar's appointment he became entitled to collect the rents, and for the mortgagee he acquired an equitable lien thereon. High on Receivers, Sec. 631. By the notice he gave to the Joliet Strowbridge Company it became apprised of his rights as receiver, and recognized them by refusing to pay longer to Reibling. The claim of appellants is based upon the theory that the rent in question is an equitable asset or chose in action belonging to Reibling; that none of the creditors had subjected it to their claims, and that appellants by filing their bill and obtaining service upon the Strowbridge Company acquired an equitable lien thereon. Their claim upon the fund is certainly not superior to that of creditors standing in a position to invoke the aid of statutory garnishment in proceedings at law. Had their judgments been in the Circuit Court their bill would not have been entertained, because they could have proceeded by statutory garnishment. Had they been in that position and undertaken to reach the fund by that process, and the Joliet Strowbridge Company, as garnishees, answered that upon the lease of the water wheel there was $492 rents due, but that the premises were mortgaged before the lease was given; that proceedings to foreclose had been commenced; that Hagar had been appointed receiver to take charge of the property and collect the rents; that the receiver had notified it of his appointment, and that it must discontinue paying rent to Reibling; that since such notice it had not paid to Reibling; that all the rent due had accrued since the appointment of the receiver— the Circuit Court would not have entered judgment against the garnishees.

We are clearly of the opinion that the beneficiaries under a trust deed acquire an equitable lien upon the rents by virtue of the appointment of a receiver, and that in this case the right which Reibling had to collect rent from the Joliet Strowbridge Company under the lease passed to Hagar as soon as he was appointed and qualified, and notified the Joliet Strowbridge Company.

The Circuit Court properly dismissed appellants' bill. The decree will be affirmed.

*Decree affirmed.*