ABRAHAM V. VAN FLEET AND JOHN T. BIRD, ESQS., VICE-CHANCELLORS.

---

RICHARD A. ROSS

*v.*

LEWIS T. TITSWORTH.

1. In a suit by one partner against the other, for settlement of the partnership concerns, this court does not get such control of the assets as to enable it to prevent the firm's creditors from proceeding at law to judgment and execution, and levy upon the assets, until after decree of dissolution providing for calling in the creditors, and some creditor has come in.

2. Where judgment creditors had recovered their judgments against partners after the filing of a bill by one partner against the other for settlement of the affairs of the copartnership, and had issued execution thereon, before decree for dissolution and call for creditors, though after the appointment of a receiver, by consent—*Held*, that they were entitled to the benefit of their liens.

333

3. To obtain relief here they must be made parties. Leave given to them to apply to be let in.

Bill for relief.　On petition of judgment creditors.

*Mr. W. B. Maxson* and *Mr. H. C. Suydam*, for petitioners.

*Mr. R. V. Lindabury, contra.*

THE CHANCELLOR.

The complainant, by his bill, which is exhibited against his copartner, states that prior to June 1st, 1876, he was the sole owner of a certain planing-mill and sash and blind and moulding-factory at Bound Brook, with the necessary stock, machinery and fixtures for carrying on the business; that about that time he entered into copartnership with the defendant in the business, the latter buying one-third of the stock, machinery and fixtures, and to have one-third of the profits, the complainant to have two-thirds; that the terms of the agreement were not reduced to writing and there was no limit fixed to the duration of the partnership; that the defendant was to pay $2,715.59 for his interest, but never paid more than $2,000 of that sum; that the business was continued until April 1st, 1882, when the defendant abandoned it without making any settlement of the partnership affairs, and that they have never since been settled, either wholly or in part; that the business, while it was carried on by the firm, produced but a small profit, and on the whole was conducted at a great loss to both partners, but particularly to the complainant; that he lent large sums to the firm, some of which were never repaid, while the defendant never contributed anything, except in paying the $2,000 on account of the price of his interest in the property, and that on the 1st of April, 1882, there was due from the firm to the defendant about $173, and to the complainant about $900. The bill further states that on the last-mentioned day the value of the assets of the firm was $5,010.27, and the amount of the liabilities $7,073.93; that since that time the complainant has continued to carry on the

business, and has done so as well as he could; that he has used all the proceeds for paying the debts, and has paid about $1,000 of the liabilities; that the uncollected balance of the book accounts which the firm had at that date is nearly worthless; that the stock is worth about $300 less than it was then; that the book accounts since that time amount to about $800, and the bills payable, created since then, to about $700; that the defendant has refused and still refuses to make any settlement of the copartnership matters or to do anything by which an adjustment can be obtained, and, on the other hand, seeks to prevent a settlement; that Isaac D. Titsworth, the defendant's father, and another creditor, have brought suits against the firm, which were pending when the bill was filed, and will soon obtain judgments, and that soon the partnership property will be sold under executions at a great loss to the partners and the creditors of the firm. The bill further states that more capital is needed to carry on the business; that the defendant has no property except his interest in the business, and is unable to advance any more capital and that the complainant is unwilling, if not unable, to advance any more, and is unwilling to continue in the business any longer the amount he has advanced beyond his share of the capital; that it is impracticable to go on with the business except at a great loss, and that in the present situation of affairs the business cannot be carried on. It prays for an answer without oath; that an account may be taken of all the copartnership affairs; that a receiver may be appointed to take charge of and settle all the copartnership matters under the direction of this court, and for general relief.

The bill was filed January 9th, 1883, and on the 23d of that month a receiver was appoined with "full power to demand, sue for, collect and receive and take into his possession all the goods and chattels, rights and credits, moneys and effects, lands and tenements, books, papers, choses in action, bills, notes and property of every description belonging to the copartnership, and to take charge of and settle all of the copartnership matters, under the direction of this court, according to law and the practice of this court." Isaac D. Titsworth, the creditor above named, re-

covered judgment against the firm on the 29th of January, six days after the receiver was appointed, and issued execution thereon and levied on the partnership property. McNabb & Co., creditors of the firm, began suit against it on the 23d of December, 1882, and recovered judgment on the 26th of January, 1883, on which judgment execution has been issued.

Those creditors ask that their judgments may be paid out of the property in the receiver's hands. The application is resisted on the ground that in view of the appointment of the receiver they are not entitled to any priority over the other creditors of the firm. They were diligent creditors, pursuing their lawful remedy for the recovery of their debts when the bill was filed. If they are to lose the benefit of their diligence it must be because the other creditors who have not sued have obtained an interest in the assets which forbids, and that can only be true on the ground that this court has assumed an administration of the affairs of this concern, which ensures a just and equitable application of its assets to the payment of its debts. If the proceedings under consideration—this suit—were, from the moment the receiver was appointed, beyond the control of the parties to them, at least so far as that the parties could not discontinue them without the consent of all the creditors, such a distribution would be insured. But the suit is at this moment, and has been ever since it was begun, under the control of the parties—the two copartners. If they agree to discontinue the suit and discharge the receiver, whether in order to go on with the business, or for any other reason, or merely at will, can this court refuse to grant the order of discontinuance or dismissal? It surely cannot. How, then, can any distribution of the assets be ensured at this stage of the proceedings? Has this court obtained such a hold of the assets as places them beyond the reach of the parties? Have the parties lost all control of the property, so that henceforth it must be administered here, and the partnership affairs settled here, without regard to the wishes of the partners?

The bill prays no dissolution. It does not expressly allege insolvency, though it shows it. When the proceedings in such a suit have gone to the extent of an order of this court that the

Ross *v.* Titsworth.

assets be distributed among the creditors, and the creditors have been called in, and any of them have come in, the parties to the suit have lost their absolute control, and the creditors who have come in have acquired an interest in the proceeding which will prevent a discontinuance without their consent. But it is most obvious that before that time the parties will not have lost their control of the suit. Such a suit is unlike one brought under the statute in insolvency against a corporation. Under that statute the court proceeds against the corporation to wind up its affairs and distribute its assets. If the court is satisfied that the company is within the provision of the statute as to insolvency &c., it will enjoin it from exercising its privileges or franchises, and from collecting or receiving its debts and from disposing of its property. That proceeding is of the nature of a bankruptcy proceeding, and the complainant or petitioner therein has no control of it after the court has entered on the administration of the assets. But such suits as this are suits between individuals in regard to the settlement of their own affairs, and though there may come a time in them when the creditors will have such an interest in the proceedings that the court will not permit the parties to discontinue, but will administer the assets, it is clear that until that time it ought to favor and not restrain the diligent creditor. Until the time comes when this court has control of the proceedings as against the parties to them, so that it may disregard their wishes as to the withdrawal or discontinuance of the proceedings and deny them control over the assets, it has not the requisite jurisdiction to forbid the creditors from acquiring liens by virtue of legal proceedings. Until there is a decree of dissolution, providing for calling in the creditors and ascertaining their demands, and some creditor has come in, the proceedings are within the control of the parties, and until then the creditors of the firm may proceed at law to acquire liens upon the property for their debts. After the decree of dissolution they may be enjoined, because then the court has provided a mode of collecting their claims. This view of the subject was taken in *Waring* v. *Robinson, Hoffm. Ch. 524,* a well-considered case. And so, too, in *Adams* v. *Hackett, 7 Cal. 187.* See, also,

22

*Adams* v. *Woods, 8 Cal. 152 ; Adams* v. *Woods, 9 Cal. 24 ;* and *Ellicott* v. *U. S. Ins. Co., 7 Gill 358.* In *Holmes* v. *McDowell, 15 Hun 585* (affirmed *76 N. Y. 596,* on the prevailing opinion of the court below), a contrary doctrine was held by the majority of the court, but the dissenting opinion of Learned, P. J., presented what seems to me to be the true view. In the opinion of the majority of the court, stress is laid on the fact that the parties had come into court to distribute the assets among the creditors, and that action on their part was regarded as equivalent to an assignment for the equal benefit of the creditors. But that view cannot be maintained, for an assignment for the equal benefit of creditors is irrevocable, while the proceeding in equity is, as before stated, up to the time when the court has called in the creditors, and some creditor has come in, revocable.

It is suggested that this court favors proceedings here for the distribution of the assets of partnerships, because it can secure equality in the administration of the property. But the maxim "equality is equity," is not applied in the administration of the assets of partnerships to deprive a diligent creditor of the lien he has lawfully acquired before the court has undertaken the distribution. A creditor-at-large of a partnership cannot maintain a suit even to restrain an execution creditor of a member of the firm from enforcing his legal remedy against the partnership property. *Young* v. *Frier, 1 Stock. 465 ; Mittnight* v. *Smith, 2 C. E. Gr. 259.* The parties to such a suit as this may, up to a certain period in its progress, dismiss it and give preferences, and the court cannot prevent it.

In the case in hand the order appointing the receiver was made by consent. It empowered him, indeed, to take into his possession the assets, and to take charge of and settle all of the copartnership matters under the direction of the court, according to law and the practice of the court; but there was no decree of dissolution nor of insolvency, nor any direction to call in the creditors, and when the judgments in question were recovered there had been no further proceedings in the cause, nor had any creditor come in. Did this court, by that order, obtain such control of the assets that it could have denied the application of the

parties to dismiss the bill and discharge the receiver the next day after it was made? Clearly, it did not. Nor could it, indeed, deny such an application if made now.

The answers to the petitions state that after the making of the order appointing the receiver, the partners, by bill of sale, transferred the partnership property to him, " in consideration of his appointment and in furtherance of the trust." That fact does not affect the decision of the question. The receiver's title under the voluntary bill of sale is not valid as against these judgment creditors, unless it be because it was created in aid of the receivership, and that transfer would not prevent the parties from putting an end to this suit by dismissing the bill.

I have thus considered the merits of these applications, without regard to the irregularity of the proceedings, because no objection was made on that ground, and it was deemed desirable that the question should be decided, with as little delay as practicable on its merits, as presented on the petitions and answers and the bill. The petitioners are not parties to this suit, and it is settled practice that no motion can be made in a cause by one who is not a party to it, except that he be made a party. *Linn* v. *Wheeler, 6 C. E. Gr. 231.* These creditors may be made parties, and thereupon the relief prayed, or other appropriate relief to the same end, will be accorded to them.