E. C. ACKERMAN AND A. M. HEINTZE, APPELLEES, V. G. A. ACKERMAN ET AL., APPELLEES, AND CARPENTER PAPER COMPANY ET AL., APPELLANTS.

FILED DECEMBER 16, 1896. No. 7214.

1. **Attachment: LEVY: RECEIVER.** Even though a sheriff in possession of personal property for its safe keeping pending an application for a receiver is to be deemed to be a receiver, a proposition not determined, the levy of an attachment on a portion of such property without leave of the court is not void in the absence of any objection by the sheriff as custodian, or by the receiver, on that ground.

2. **Chattel Mortgages: REGISTRATION.** Where the evidence showed affirmatively that a chattel mortgage was withheld from record more than a month in pursuance of an agreement so to continue to withhold it unless some change or difficulty should occur in the business affairs of the mortgagor which would make it necessary

to protect the interest of the mortgagee, and the mortgagor was to notify the mortgagee of any financial difficulty the mortgagor might meet with, upon which notification the mortgage was to be filed, *held*, to sufficiently establish a fraudulent purpose of both parties to the mortgage such as to render it invalid and void as to creditors of the mortgagor.

3. **Receivers: SALE: TIME.** A decree required a receiver to sell the assets of an insolvent firm on a day named. The receiver, without other authority, advertised and sold such assets after the date fixed by the decree. *Held*, That such sale was absolutely void, and not merely irregular in such a sense that a confirmation over objections could render it valid.

APPEAL from the district court of Douglas county. Heard below before SCOTT, J. *Reversed.*

*L. D. Holmes* and *Byron G. Burbank*, for appellants.

*Breckenridge & Breckenridge, Cavanagh, Thomas & Mc-Gilton, Duffie, Crane & Van Dusen, Horton. & Blackburn, Schomp & Corson, Isaac E. Congdon, J. M. Woolworth,* and *Rich, O'Neill & Sears, contra.*

RYAN, C.

On the 10th day of August, 1893, E. C. Ackerman and A. M. Heintze began this action against G. A. Ackerman in the district court of Douglas county. These plaintiffs alleged that in 1887 they, with the defendant, had entered into partnership for the purpose of conducting a general printing, engraving, and lithographing business in the city of Omaha; that the defendant was the financial manager for the firm; that its business had been, until about January 1, 1893, conducted profitably, but that thereafter, as shown by its books, its operations were at a great loss, as plaintiffs alleged, of $1,000 per month. For the purpose of accounting for this condition of affairs it was further alleged that the defendant had injudiciously purchased supplies and machinery and had appropriated to his own use $6,000 of the assets of the firm without the knowledge of either plaintiff, and that, upon the discovery by the plaintiffs, on January 1, 1893, of

this misappropriation the defendant had promised to make restitution to the firm, but had wholly failed to perform this promise, and that at the time of filing the petition he was insolvent, and was refusing, upon demand, to make an accounting of the affairs of the aforesaid firm. It was therefore charged by plaintiffs that the firm was, at the time of the commencement of this action, unable to meet its obligations and was insolvent; that its indebtedness was a large amount, as to which plaintiffs had no means of knowledge, but charged the fact to be that it was at least $45,000, and that the assets were reasonably of the value of $65,000, but that, if they were sold at a sacrifice, these assets would be wholly inadequate to the payment of the aforesaid indebtedness. The eleventh paragraph and the prayer of the petition which followed immediately thereafter was as follows:

"11. Plaintiffs further show that unless the property of said copartnership is preserved intact and saved, great loss will ensue to the copartners and their creditors and the assets of said firm sacrificed.

"Plaintiffs therefore pray that an accounting may be ordered between the parties to this action and the said firm dissolved, and that a receiver be appointed by the court to take charge of all the property of said firm and collect the debts due to the said firm and hold the said property and assets and money collected subject to the further order of the court; and plaintiffs further pray that pending the application for a receiver herein the sheriff of Douglas county be ordered to take charge of all the assets and business of said firm of Ackerman Bros. & Heintze and hold the same intact, subject to the further order of the court, and for such further relief as equity and good conscience demand."

Contemporaneously with the filing of this petition there was filed a motion for the appointment of a receiver, who should take charge of "all the property and assets of the firm of Ackerman Bros. & Heintze, upon the grounds set forth in the petition." Afterward, on

the 10th day of August, 1893, Hon. A. N. Ferguson, one of the judges of the said district court, on the presentation of the petition and motion at chambers, ordered that the hearing of the application for a receiver be had on the 17th day of August, 1893, and that, pending such application for a receiver, George A. Bennett, sheriff of Douglas county, take possession of all the partnership property of Ackerman Bros. & Heintze, situated at 1116 and 1118 Howard street, Omaha, and hold it subject to the further order of the court. Pursuant to the terms of this order the sheriff at once took possession. Later still, on the same day, the Carpenter Paper Company commenced its action in the aforesaid court against the firm of Ackerman Bros. & Heintze for the recovery of judgment of the sum of $3,421.83. A portion of this had not matured at this time, and accordingly there was the necessary showing made for an attachment in such case, as well as with respect to the amount which was then past due, and there was thereupon at chambers made the following order:

"Upon reading the petition of the plaintiff herein and the affidavit in attachment of the plaintiff herein, and it appearing to the court that the plaintiff's claims are just, it is ordered by the court that an attachment be granted in this case against the defendant for the sum of five thousand dollars ($5,000) upon the execution by the plaintiff of an undertaking in attachment on the part of the plaintiff to the defendant as required by law.

"August 10, 1893.        A. N. FERGUSON, *Judge.*"

Immediately after the issue of the writ of attachment, and on the day of its allowance, the sheriff, then being in possession of the entire establishment of the firm of Ackerman Bros. & Heintze, as already indicated, levied said writ on a portion of its personal property. Afterward, on December 9, 1893, in due order, there was a judgment by default in favor of the Carpenter Paper Company as prayed, and in satisfaction thereof the attached property was ordered sold. On November 22,

1893, the Carpenter Paper Company filed its petition of intervention in this action, whereby it described the nature of the debt owing it by the firm of Ackerman Bros. & Heintze and detailed the proceedings had up to that time for the collection of said indebtedness. The prayer of the Carpenter Paper Company's petition of intervention was that its attachment lien might be enforced in this case and declared a lien paramount to all other liens against the property which was then in the hands of a receiver, who, on August 23, 1893, had been appointed and accordingly had succeeded to the possession of the sheriff. In this petition of intervention it was shown, and it is not questioned, that the order appointing the receiver on August 23, 1893, was expressly conditioned that the delivery of personal property by the sheriff to the receiver was without prejudice to the lien of said intervenor and that said intervenor's lien was in no way impaired by the delivery of the property taken under the aforesaid attachment proceedings. We learn from the record that the receiver was authorized to operate the plant of Ackerman Bros. & Heintze for a period of about five months; that this was done at a loss, and that in this unsuccessful attempt there was manufactured and sold the greater part of the property upon which the attachment had been levied in the suit of the Carpenter Paper Company against Ackerman Bros. & Heintze. As this property was raw material, which by the receiver, under the direction of the court, was manufactured and sold for the benefit of the estate of the insolvent firm, and as the other personal property attached had been appropriated to the payment of the debts of the firm of Ackerman Bros. & Heintze, the Carpenter Paper Company is entitled to be paid as a preferred creditor, if its attachment was valid and effective. After the Carpenter Paper Company had procured its attachment to be levied by the sheriff there were other attachment suits begun and like levies were procured to be made. There were several interventions in this action predicated on these attach-

ments, and other interventions for the purpose of having recognized and enforced the liens created by chattel mortgages executed by the firm of Ackerman Bros. & Heintze. An extended description could subserve no useful purpose, and of necessity would cause confusion. They will, therefore, be unmentioned, except where a different course is required by the exceptional relations to this action of some of the parties concerned. On the final hearing no claim for a lien was recognized, but all creditors of the firm of Ackerman Bros. & Heintze, whether parties to this action or not, were permitted to present their claims, and the property in the hands of the receiver having been sold, a *pro-rata* distribution of the proceeds was ordered to be made to the respective claimants. From this judgment two intervenors, the Carpenter Paper Company and the George R. Dickinson Paper Company, alone have appealed. The rights and status of the parties other than these two appellants will therefore remain as established by the decree of the district court, except as these shall be affected by the relief to which these appellants shall be found entitled. As the rights of these two appellants cannot be determined together, we shall first consider those of the Carpenter Paper Company.

It is urged that when the attachment suit was begun by the Carpenter Paper Company all the property of the firm of Ackerman Bros. & Heintze was *in custodia legis*, and, therefore, that no levy could be made upon it. The possession of the sheriff was merely for the preservation of the property until the statutory time necessary before the appointment of a receiver should elapse, and that, too, in an action between the partners for the dissolution of their relations as such and the distribution of the joint assets, without the least reference to the rights of the creditors. At any time plaintiffs could dismiss this action and thereby terminate the legal custody invoked against the enforcement of the claims of the creditors. Until there was actually an intervention and this

was subsequent to the levy of the Carpenter Company's attachment, this power of the partners to resume possession of their assets continued unlimited. It can readily be seen that such proceedings might be made available to hinder and delay creditors, and there are in this record some circumstances suggestive of such a purpose. In reference to the possession of the sheriff pending the application for a receiver and the rights and remedies of creditors of the firm of Ackerman Bros. & Heintze, meantime, there has been cited by counsel for the Carpenter Paper Company the following very instructive and apposite cases: *Adams v. Hackett*, 7 Cal., 187; *Adams v. Woods*, 8 Cal., 153; *Adams v. Woods*, 9 Cal., 24; *Ross v. Titsworth*, 37 N. J. Eq., 333; *Ellicott v. United States Ins. Co.*, 7 Gill [Md.], 307. Especially with reference to the difference between the relations of a mere custodian of property to it, *pendente lite*, and those of a receiver regularly appointed, the cases of *Weber v. Weber*, 63 N. W. Rep. [Wis.], 757, and *Devlin v. Mayor*, 23 N. Y. Supp., 888, are quite in point. Upon this distinction, however, we are not required to base our conclusions, for if, for the sake of the argument, it should be conceded that the custodian must be regarded as a receiver for all purposes, nevertheless the result claimed would by no means necessarily follow. In *Flentham v. Steward*, 45 Neb., 640, it was held that while it was proper to obtain permission to sue where the defendant's property was in the hands of the receiver, yet that this permission was not jurisdictional, and that by the failure of the receiver to insist upon this condition precedent it was waived and that a judgment under such circumstances was valid. To the same effect is *Mulcahey v. Strauss*, 37 N. E. Rep. [Ill.], 702, and *Tobias v. Tobias*, 38 N. E. Rep. [O.], 317. The Carpenter Paper Company is therefore, in any event, entitled to the first lien among the creditors of Ackerman Bros. & Heintze upon the assets of that firm.

The George R. Dickinson Paper Company, on August 17, 1893, filed its answer in this action alleging that on

June 29, 1893, it was a creditor of Ackerman Bros. & Heintze in the sum of $10,238.29, evidenced by the promissory note of said firm; that on said date last named the firm of Ackerman Bros. & Heintze, for the purpose of securing said note, executed a chattel mortgage on certain property of said firm; that on August 11, 1893, said chattel mortgage was filed in the office of the county clerk of Douglas county; that immediately thereafter authority was placed in the hands of the sheriff, and ever since the said sheriff has retained said mortgaged property subject to the order of the court. In effect the prayer of the George R. Dickinson Paper Company was that the said chattel mortgage might be enforced against the property therein described as a lien paramount to that of every other creditor of Ackerman Bros. & Heintze. On the trial it was developed that at the time the said chattel mortgage was made there was executed a written agreement by the George R. Dickinson Paper Company to the effect that if certain payments were made certain renewal notes would as often be accepted for the balance due in each instance. Following this provision was this language in the said agreement: "In case said Ackerman Bros. & Heintze make said payments promptly, said extensions are to be made and the mortgage to secure said note will not be recorded, unless a failure is made in such payment or some change or difficulty shall occur in the business affairs of said Ackerman Bros. & Heintze which shall make it necessary to protect our interest, and unless we shall deem ourselves in great danger of loss." It was shown on the trial that credits were extended on the faith of appearances too favorable to Ackerman Bros. & Heintze by reason of this mortgage being withheld from record, which credits would not have been extended if the existence of the mortgage had been known. The mortgagee claims that the failure to record the chattel mortgage is available only to the parties who have made a levy on the chattels in said mortgage described. Before this mortgage was recorded the property included

therein was placed in the custody of the sheriff. In the suit wherein this property was intrusted to the sheriff the George R. Dickinson Company became a party and sought relief affirmatively as a creditor entitled to a preference by virtue of its mortgage. By assuming this attitude this mortgagee presented the question of the validity of its mortgage as entitling it to such affirmative relief. Parties adversely interested put the validity of this mortgage upon its proof by a general denial. It was not requisite that they should qualify themselves as though they were instituting proceedings to set aside this mortgage, neither was it necessary that they should plead that this mortgage was fraudulent. These issues were sufficiently presented by the tender of the Dickinson Company's mortgage by the Dickinson Company as valid with that fact properly disputed. According to the showing of this mortgagee it received this mortgage on June 29 and failed to publish its existence by filing until August 11 thereafter. It seems to be conceded by counsel for the George R. Dickinson Paper Company that, under the provisions of section 14, chapter 32, of the Compiled Statutes, it might be that this mortgage should be deemed fraudulent until it was filed, but that thereafter it should be deemed valid as though the filing had been immediately after it was made. We need not consider what the results might be if only the question of filing long after the making of the mortgage was involved, for that would be limiting our inquiry to the inference raised by statute from mere failure to act. Unfortunately for the mortgagee its motive for withholding this mortgage from record was dependent on no mere implication from non-action, for, contemporaneously with receiving this mortgage, it executed a written agreement that it would not be recorded unless some change or difficulty should occur in the business affairs of the mortgagor which would make the filing necessary to protect the interest of the mortgagee. A practical construction was given this language when the filing took place, for this was not un-

til the financial condition of the mortgagor had become so hopeless that a majority of the members had found it necessary to apply for a receiver and some of its creditors, by attachment suits, were seeking to enforce payment of their claims. The agent of the mortgagee who, in its behalf, signed the qualifying agreement which accompanied the making of the mortgage, testified that the mortgage was to be kept from record because the mortgagor's business would be injured if that course was not taken. One of the members of the firm of Ackerman Bros. & Heintze testified that the mortgage was not to be recorded until the mortgagor notified the mortgagee that the mortgagor had gotten into financial trouble such as would endanger the interests of the mortgagee. Under these circumstances the district court very properly found this mortgage fraudulent and void as to the creditors of Ackerman Bros. & Heintze, and with equal propriety permitted the mortgagee to prove its claim as a general creditor of said last named firm.

We have already quoted the prayer of the petition of Emil C. Ackerman and A. M. Heintze, among other things, for the appointment of a receiver and the preliminary order made in respect thereto. When the receiver was appointed it was, in the language of the order of appointment, "to take possession of all the partnership property and hold the same subject to the further order of the court; and until such further order said receiver is authorized and directed to run the said business of Ackerman Bros. & Heintze, to buy such stock and merchandise as is necessary to the proper conduct of the business, to h're competent help to assist him and to pay for the same, and to take charge of the books and books of account of the firm and collect the outstanding accounts." This order was made on August 23, 1893, and no other or different definition of the powers of the receiver was prescribed until the entry of the final decree, which contained the following language: "It is further ordered, adjudged, and decreed that all of the assets of the firm of Ackerman

Bros. & Heintze be sold at public sale to the highest bidder for cash on May 29, 1894." It seems that the receiver was prevented from making the sale on the day above named. He, nevertheless, without further authority, advertised the sale of the assets of the firm of which he was receiver, to take place on the 18th day of June, 1894, and accordingly on that and the following day made such sale. The George R. Dickinson Paper Company gave due notice of its objections to this sale before it was made. After the report of the receiver showing such sale further objections were duly filed by said company and overruled by the court. To this ruling the George R. Dickinson Paper Company duly excepted, and we have now presented the question as to whether or not this sale by the receiver was void. In *Nebraska Loan & Trust Co. v. Hamer*, 40 Neb., 281, it was held that a judicial sale must be held in accordance with the decree of the court. This rule was enforced in *Hooper v. Castetter*, 45 Neb., 67. In *Mallard v. Dejan*, 14 So. Rep. [La.], 238, it was held that an order for the sale of the property of minors at private sale did not authorize a public sale, notwithstanding the fact that a few hours before the sale took place it was directed by the court that the sale should be public. In *Tompkins v. Tompkins*, 39 S. Car., 537, it was held that where the decretal order for a sale of land fixed the date thereof, a sale made at any other time was unauthorized and void. This same general principle was enforced in *Williamson v. Williamson*, 52 Miss., 725, *Macy v. Raymond*, 9 Pick. [Mass.], 284, *Marr v. Boothby*, 19 Me., 150, and *Mason v. Ham*, 36 Me., 573. The confirmation was operative, it is true, to the extent of curing defects and irregularities. (*O'Brien v. Gaslin*, 20 Neb., 347; *McKeighan v. Hopkins*, 19 Neb., 33; *Neligh v. Keene*, 16 Neb., 407; *Crowell v. Johnson*, 2 Neb., 146; *Watson v. Tromble*, 33 Neb., 450.) In *Schribar v. Platt*, 19 Neb., 625, the following language was used by COBB, J., in delivering the opinion of this court: "The only thing settled or adjudicated in the proceedings and order of confirmation, so called, was as to the proceedings

of the sheriff and those acting under and with him in the levy, appraisement, advertising, making and returning of said sale." In the sale under consideration there was no mere irregular or defective proceeding, for this sale was without authority,—a mere nullity; and a confirmation over objection presenting that question could not be made to take the place, and answer the purpose, of an order, in advance, directing the sale to be made. We are aware that this conclusion involves serious consequences from the fact that the greater part of the bid of the purchaser has already been distributed among numerous creditors of the firm of Ackerman Bros. & Heintze, but this cannot be avoided. In *Tompkins v. Tompkins, supra*, a sale had been made of real property as entirely without authority, as was the sale made in this case, and before appeal to the supreme court the cash which had been paid by the bidder had been distributed. This sale was held to be void, but the court, in the exercise of its equity jurisdiction, treated the bid of the purchaser as a continuing bid with the payment thereof made in advance, and directed that a decretal order should be made, on circuit, whereby the master should be directed to sell the tract in dispute after twenty-one days' public advertisement, but that the sale should, in the advertisement and in its conduct, provide that no bid would be received of less than $3,250, the amount of the former bid, and that if no more than this was bidden, the former sale should be ratified, but that, if a greater bid should be received, it would be accepted, and from the proceeds thereof it was directed that the first purchaser was to be reimbursed the amount of his bid. This decretal order could scarcely be entered in this court with the same degree of confidence that it might if the subject-matter of the sale had been real property of which the status was not liable to have changed pending the appeal.

The judgment of the district court upon the issues joined in this case, and the order confirming the sale, are

reversed, the sale itself is declared null and void, and this cause is remanded for further proceedings not inconsistent with the views hereinbefore expressed.

REVERSED AND REMANDED.