DULL v. LE FEVRE et al.

(District Court, E. D. Washington, N. D. June 26, 1914.)

No. 1736.

1. TAXATION ⟨⟩335—ASSESSMENT—NATURE OF PROPERTY—ESTOPPEL.

Where the character of the title of a smelting company, authorized by Act April 28, 1904, c. 1820, 33 Stat. 567,. to construct a smelter and flume on land within an Indian reservation, to the improvements placed on such lands, was fully considered between the taxing officers of the county and the proper officers of the smelting company, and by direction of the company itself the property was listed and assessed as personal property, the assessment and a sale for taxes was valid, notwithstanding the claim that title to the land passed to the smelting company and that the improvements were therefore a part of the realty, as a taxpayer is bound and estopped by his own statements as to the nature, title, and value of his property in a list which he returns for taxation, though he can prejudice no one else by listing property which he does not own, nor can he make such a list a covenant for a title.

[Ed. Note.—For other cases, see Taxation, Cent. Dig. § 562; Dec. Dig. ⟨⟩335.]

2. CORPORATIONS ⟨⟩560—RECEIVERS' SALES—TIME AND NOTICE OF SALE.

Where the receiver of a corporation, ordered by the court which appointed him to sell the property of the corporation on a specified date, was enjoined from making the sale on that date, a subsequent sale by him several months later, without any further order from the court by which he was appointed, and without any other or further notice of sale, was a nullity.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. §§ 2253–2260, 2262; Dec. Dig. ⟨⟩560.]

3. PUBLIC LANDS ⟨⟩39—GRANTS FOR TOWN SITE—TITLE.

Under Act March 3, 1905, c. 1479, 33 Stat. 1064, directing the Secretary of the Interior to set apart a tract of land not exceeding 120 acres in extent, adjacent to lands owned by a smelting company in an Indian reservation, suitable in its location for a town site, and to convey such land to such person as might be designated by such company to receive title, upon payment by the company of such price as might be fixed by him, the person designated by the corporation to receive title to the town site became a mere naked trustee, and took no beneficial interest in the grant from the government.

[Ed. Note.—For other cases, see Public Lands, Cent. Dig. §§ 83–90, 92–99; Dec. Dig. ⟨⟩39.]

In Equity. Bill by A. J. Dull against A. J. Le Fevre and others. Decree rendered.

O. C. Moore, of Spokane, Wash., for plaintiff.

McCarthy & Edge, of Spokane, Wash., for defendants.

---

⟨⟩For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

RUDKIN, District Judge. The Act of Congress of April 28, 1904 (33 Stat. 567), provides as follows:

"That the Secretary of the Interior be, and he is hereby, authorized and directed to permit the Kellar & Indiana Consolidated Smelting Company, a corporation organized under the laws of the state of Washington, to construct a smelter in the immediate vicinity of the San Poil river, in the south half of the Colville Indian reservation; that the smelter shall be located on the San Poil river, and that permission be granted to construct a flume from the site of the smelter to a point on the San Poil river where a water supply can be made available; that six acres of land be set aside for the site of the smelter, and a strip of land of sufficient width allowed for the erection * * * of the flume; that permission shall be given to the Kellar & Indiana Consolidated Smelting Company to purchase timber and stone necessary for the work of construction; that the Secretary of the Interior shall permit the work to be done under such rules and regulations as he may prescribe, and he shall also prescribe the prices the said Kellar & Indiana Consolidated Smelting Company shall pay for the land, the stone, and the timber used in the construction works: Provided, that the laws regulating intercourse with Indians shall be applicable to the lands set aside under this act, so long as the south half of the Colville reservation remains as an Indian reservation."

The Act of March 3, 1905 (33 Stat. 1064), provides as follows:

"That the Secretary of the Interior be, and he is hereby, authorized and directed to set apart a tract of land not exceeding one hundred and twenty acres in extent, immediately adjacent to the lands now owned by the Kellar & Indiana Consolidated Smelting Company, in the south half of the Colville Indian Reservation, in the state of Washington, suitable in its location for a town site, and that he cause the same to be conveyed to such person as may be designated by said company to receive title thereto, upon payment by said company of such price as may be fixed by him, and that the money received therefrom shall be deposited in the treasury of the United States to the credit of the Colville Indians."

It appears from the amended bill of complaint that the selection for the smelter site and the flume and power site were approved by the Secretary of the Interior on the 7th day of July, 1906; that prior to the 27th day of September, 1911, the company had, at a cost of more than $200,000, constructed and completed a plant on the sites thus selected, had fully equipped the same with all necessary machinery for the treatment, reduction, and smelting of ores, had constructed a flume from the smelter to the power site, and had equipped a sawmill plant and other expensive improvements necessary for the conduct of its business; that all such improvements were constructed on and attached to the above-described lands, with the intention that the same should become permanently attached thereto, and that the same did in fact become permanently attached thereto and a part thereof; that for the years 1909 and 1910 the county assessor of Ferry county, in which such improvements are situate, assessed the same as personal property for the purposes of taxation, and that on the 27th day of September, 1911, the sheriff of Ferry county sold such improvements to the defendant Le Fevre at tax sale for the sum of $2,175.98 and issued his bill of sale therefor. The regularity of the tax proceedings is not questioned, but the plaintiff contends that the improvements were erroneously assessed as personal property, and that the assessment was therefore void.

It further appears that the Kellar & Indiana Consolidated Smelting Company designated its president, one Robert L. Boyle, as the person to receive title to the town site referred to in the act of March 3, 1905, and that patent issued to him under the provisions of that act. It further appears: That an action was commenced in the superior court of Ferry county by the filing of a complaint on the 17th day of May, 1912, entitled "L. P. Farr, Plaintiff, v. Kellar & Indiana Consolidated Smelting Company, Defendant." That on the same day a receiver was appointed for the property and assets of the corporation. That on the 11th day of June, 1912, the receiver filed his report, and on the 26th day of June, 1912, a petition for an order authorizing the sale of the property and assets of the corporation. That on the 24th day of June, 1912, on the petition to sell, it was ordered:

That the prayer of the petition be granted; that all the real and personal property of the defendant corporation be sold; "that said receiver is ordered to advertise said real and personal property for sale by public notice thereof for two consecutive weeks in the Republic News Miner, a paper of general circulation, published at Republic, Ferry county, state of Washington; that said sale be conducted by him on the 20th day of July, 1912, at 10 o'clock a. m., at Kellar, Ferry county, state of Washington, at the receiver's residence, at public auction; and that bids be received by him for the property belonging to said company at said time."

Notice of this sale was published as directed by the court, but the sale was thereafter enjoined from time to time until the 9th day of November, 1912, by orders of this court in certain bankruptcy proceedings pending against the corporation. On the 9th day of November the property was offered for sale by the receiver without any further order of the court by which he was appointed, and without any other or further notice of sale, and was bid in by the defendants here, or by those under whom they claimed. The sale was later confirmed over the objections of certain of the stockholders, and conveyances were executed by the receiver.

On the foregoing record the following questions are presented: First, did the purchaser of the improvements on the smelter and flume sites acquire any title at the tax sale? Second, did the defendants or their predecessors in interest acquire any right or title at the receiver's sale? And, third, has the defendant corporation any beneficial interest in the townsite?

[1] 1. Under the original bill of complaint it was claimed that the tax upon the improvements on the smelter site and flume site was void, because the title to the real property was vested in the United States, and by operation of law the title to the improvements was vested in the same manner. On motion to dismiss, the court held that, regardless of whether the title to the smelter site and flume site was vested in the government, there was no intention on the part of the government to claim the improvements made thereon, or to exempt them from taxation, and that the improvements were properly assessed and taxed as personal property. The motion to dismiss was therefore granted. Under the amended bill it is claimed that the title to the smelter site and flume site vested in the smelting company under the act of Congress, and that the improvements were wrongfully as-

sessed as personal property, and that the assessment is therefore void.

The character or extent of the title or interest vested in the company under the act relating to the smelter site and flume site is by no means certain or free from ambiguity. It appears from the record, however, that the character of that title was fully considered between the taxing officers of Ferry county and the proper officers of the smelting company, not only during the years 1909 and 1910, but in prior and subsequent years, that the property was listed and assessed as personal property by direction of the corporation itself, and the rule seems to be well established that a taxpayer is bound and estopped by his own statements as to the nature, title, and value of his property made in the list which he returns for taxation, although, of course, he can prejudice no one else by listing property which he does not own, nor can he make such a list a covenant for a title. 37 Cyc. 994. These improvements having been fairly and honestly assessed as personal property by direction of the corporation, the assessment and sale must stand.

[2] 2. The receiver was directed to sell the assets of the corporation on the 20th day of July, 1912, at a certain place and upon a certain notice. This order was the limit and the measure of his authority, and I am constrained to hold that a sale made several months thereafter, without further notice or further authority from the court, is a nullity, and must be set aside. High on Receivers (4th Ed.) p. 234; Ackerman v. Ackerman, 50 Neb. 54, 69 N. W. 388, 392.

[3] 3. There is no room to doubt that the person designated by the corporation to receive title to the town site became a mere naked trustee and took no beneficial interest in the grant from the government. This disposes of every question in the case, except the question of attorney's fees. Without any evidence as to the value of the property recovered, aside from the evidence on the jurisdictional question, it is extremely difficult to fix a reasonable fee. I will fix the fee, however, at $500, subject to a further hearing when the final decree is presented for signature next Monday morning.

Let an order be prepared accordingly.