

# THE ATTORNEY GENERAL
## OF TEXAS

### AUSTIN 11, TEXAS

WILL WILSON
ATTORNEY GENERAL

February 27, 1961

Honorable J. O. Duncan
District-County Attorney
Gilmer, Texas

Opinion No. WW-1001

Re: Constitutionality of Sub-
section (d), Section 7 of
Article 1722a, The Water
Safety Act, requiring every
motorboat to carry life pre-
servers of the type approved
by the Commandant of the
United States Coast Guard.

Dear Mr. Duncan:

In your letter requesting an opinion from this office
you ask whether Subsection (d), Section 7 of Article 1722a,
The Water Safety Act, is constitutional.

Section 7, Article 1722a of Vernon's Penal Code, Acts
1959, 56th Legislature, chapter 179, page 369, states in part:

"(d) Every motorboat or vessel shall have
aboard one life preserver, buoyant vest, ring
buoy or buoyant cushion of the type approved by
the Commandant of the United States Coast Guard
in good and serviceable condition for each per-
son on board.

"(e) No person shall operate or give per-
mission for the operation of a vessel which is
not equipped as required by this Section or modi-
fication thereof."

Section 14 of the Act prescribes penalties as follows:

"(a) Every person who violates or fails to
comply with any provision of this Act, shall be
guilty of a misdemeanor.

"(b) Every person convicted of a misdemeanor
for which another penalty is not provided shall be

punished by a fine of not less than Ten Dol-
lars ($10) nor more than Fifty Dollars ($50)."

In our opinion, these provisions are constitutional,
for the following reasons.

Subsection (d) undertakes to adopt by reference cer-
tain provisions of federal law, namely, the regulations
issued by the Commandant of the United States Coast Guard,
in discharge of his official duties, approving certain types
of water safety devices. We must first determine whether
Subsection (d) was intended to include devices approved after
the effective date of Article 1722a, for while the Legislature
is competent to adopt existing provisions of federal law,
an attempted adoption of prospective provisions of federal
law, whether statute or administrative regulation, is uncon-
stitutional as a delegation of legislative power. Hutchins
v. Mayo, 143 Fla. 707, 197 So. 495 (1940); State v. Intoxicat-
ing Liquors, 121 Me. 438, 117 A. 588 (1922); State v. Gauthier,
121 Me. 522, 118 A. 380 (1922); Opinion of the Justices, 239
Mass. 606, 133 N.E. 453 (1921); See State v. Urquhart, 50 Wash.
2d 131, 310 P. 2d 261 (1957) and cases cited therein; Santee
Mills v. Query, 122 S.C. 158, 115 S.E. 202 (1922); Brock v.
Superior Court, 9 Cal. 2d 291, 71 P. 2d 209 (1943); Fla. Indus-
trial Commission v. Peninsular Life Ins. Co., 152 Fla. 55, 10
So. 2d 793 (1943); but see People v. Goldfogle, 242 N.Y. 277,
151 N.E. 452 (1926); Ex Parte Lasswell, 1 Cal. App. 2d 183,
36 P. 2d 678 (1934). In Texas the construction of a so-called
"reference" statute, as with other questions of statutory
construction, is a matter of ascertaining legislative intent.
Trimmier v. Carlton, 116 Tex. 572, 296 S.W. 1070 (1927).
Since the statute does not expressly resolve the question,
and since the Legislature will be presumed not to have in-
tended to contravene the Constitution, County School Trustees
v. Edna Independent School Dist., 9 S.W. 2d 506 (Civ. App.
1928), affirmed 34 S.W. 2d 860 (Com. App. 1928); Santee Mills
v. Query, supra, we conclude that subsection (d) must be
construed as including only those types of water safety de-
vices approved by regulations of the Commandant in effect
at the time of its enactment. See Santee Mills v. Query,
supra; Fla. Industrial Commission v. State, 155 Fla. 772,
21 So. 2d 599 (1945). Subsection (d) is therefore not uncon-
stitutional as a delegation of legislative power; its refer-
ence to types of water safety devices approved by the Comman-
dant serves merely to set forth the class of water safety
devices required to be carried aboard in order to avoid the
penalties of Section 14. State v. City of Austin, et al,

331 S.W. 2d 737,_____Tex._____(1960).[1]

---

[1]This case involved the constitutionality of Article 6674w-4, which provides for reimbursement by the State to utilities of the expense of relocating facilities of the utility located on public rights of way when such relocation is necessitated by the improvement or construction of certain designated interstate highways, provided that "such location is eligible for Federal participation." Acts 1957, 55th Legislature, page 724, Chapter 300, Sec. 4A. The Supreme Court noted in its opinion that this Act was evidently passed in order to take advantage of the provisions of the Federal-Aid Highway Act of 1956, which authorized payment of Federal funds to the states as reimbursement for expenses of utility relocation, so long as payment by the State to the utility would not violate State law or any legal contract between the utility and the State. The statute also provided that the term "cost of relocation" was to refer to an amount calculated in a specified manner, "and otherwise as may be fixed by regulations for Federal cost participation." The Court rejected the contention that the statute was an unconstitutional delegation of legislative power to the United State, its Congress and agencies, stating:

> ". . . A change in the percentage of Federal participation will naturally affect the amount which the state receives by way of reimbursement, but will not alter in any way the obligation of the state to the utilities. No part of the expense will be paid by the state, of course, if the relocation is not eligible for Federal participation, but in making this provision the Legislature was simply establishing a class of relocation projects for which the utilities will be entitled to reimbursement. It is our opinion that the classification is reasonable and that the law is not unconstitutional as a delegation of legislative power."

The question of whether Article 6674w-4 was intended to adopt future provisions of federal statutes or administrative regulations was not discussed. We do not believe, however, that this opinion is properly read as holding that such an effect was intended by the Legislature (but that the Article so construed is nevertheless not an unconstitutional delegation of power to the federal government). We take this view notwithstanding the language in the opinion regarding future changes (See Footnote No. 1 continued at the bottom of next page.)

Even though the Statute is not an unconstitutional delegation of power, the membership of this class of water safety devices must be ascertainable with reasonable definiteness and certainty if the Statute is to withstand an attack as insufficiently definite to afford due process of law. Lone Star Gas Co. v. Kelly, 140 Tex. 15, 165 S.W. 2d 446 (1942), answers to certified questions conformed to, 166 S.W. 2d 191 (Civ. App. 1942). As to this point, a reference to the regulations of the Commandant raises some initial doubt. In the first place, Section 7 of Article 1722a requires "one life preserver, buoyant vest, ring buoy or buoyant cushion of the type approved by the Commandant of the United States Coast Guard." Literally read, the Statute contemplates an approval by the Commandant of one type of each of the four kinds of water safety devices mentioned. In fact, Coast Guard regulations provide for the approval of an indefinite number of types of life preservers, buoyant vests, ring buoys, and buoyant cushions. 46 C.F.R. 160.002-7, 160.003-7, 160.004-7, 160.005-7, 160.009-7, 160.047-7, 160.048-7, 160.049-7, 160.050-7, 160.052-9. Under these regulations, the basic requisite for approval of a type of water safety device of one of the four kinds mentioned in Section 7 of Article 1722a is that the type submitted for approval meet Coast Guard specifications for devices of its kind (whether life preserver, buoyant vest, ring buoy, or buoyant cushion), material (whether kapok, cork, balsawood, fibrous glass, or unicellular plastic foam), and intended use (some specifications are for devices for use on merchant vessels, others for devices for use on motor boats, still others for devices to be used on "motor boats of classes A, 1, or 2 not carrying passengers for hire"). As of the effective date of Article 1722a,[2] furthermore, there were many types of water safety devices of each of the four general kinds mentioned in that Article which had been approved by the

---

[1](Cont'd.) in the percentage of federal participation in meeting the expense of utility relocation projects. For the statute did not make reimbursement of the utility conditional upon a project's eligibility for federal participation in any given percentage, but only upon its eligibility for federal participation. It adopted no Federal provisions, whether present or future, regarding the percentage of Federal participation.

[2]Ninety days after May 12, 1959.

Commandant, each type having been found to meet the basic specifications for devices of its general kind. See, e.g., 1959 Federal Register 1871 f.f., Notice of United States Coast Guard of Approval and Termination of Approval of Equipment, Installations, or Materials and Change in Name and Address of Manufacturers, March 10, 1959.

Since a Statute is not to be held unconstitutional if it is subject to any other reasonable construction, State v. City of Austin, supra; see Trapp v. Shell Oil Co., 145 Tex. 323, 198 S.W. 2d 424 (1946), we conclude that it was the intent of the Legislature that the carrying of a life preserver, buoyant vest, ring buoy, or buoyant cushion of any of the types approved as of the effective date of Article 1722a would satisfy the requirements of Subsection (d) of Section 7 of that Article. The requirements of the Statute thus may be precisely and definitely ascertained, so as to remove any question of its constitutionality in this respect.

The fact that the Statute is not unconstitutional as a delegation of legislative power or as an insufficiently definite penal law does not, of course, preclude the possibility of unconstitutionality on other grounds. State v. City of Austin, supra, held, in addition to the holding already cited, that a statute limiting the class of utility relocation projects entitled to be undertaken at state expense to those which under Federal law would entitle the state to a reimbursement from the Federal Government was not an unreasonable classification. 331 S.W. 2d 737, 746. In the case of the present penal statute, however, we are concerned not with privileges dispensed by the Legislature, as to which the Constitution requires only that they be distributed without arbitrary discrimination, but rather with rights of person and property, which the Constitution[3] protects against arbitrary deprivation by the state. A legislative restriction upon such rights imposed by the State in the exercise of its police power is arbitrary and unconstitutional unless it bears a reasonable causal relationship to the ends sought to be achieved and unless the ends themselves fall within the scope of the legitimate concern of the State for the protection of the health, safety, or morals of the public. American Federation of Labor v. Mann, 188 S.W. 2d 276 (Civ. App. 1945), no writ history.

---

[3] U. S. Constitution, Amendment XIV; Texas Constitution, Article I, Section 19.

We feel that there can be no question but that the State may properly enact legislation designed to promote safety in the use of boats by private persons. The question is whether making it a penal offense to operate a boat without a life preserver or other water safety device of the type approved by the Commandant of the United States Coast Guard tends toward the achievement of this end with reasonable certainty and effectiveness. The Commandant of the United States Coast Guard, a high Federal official, is under a general duty by Federal law to ". . . promulgate and enforce regulations for the promotion of safety of life and property on the high seas and on waters subject to the jurisdiction of the United States . . ." 14 U.S.C., Section 1. At the time Article 1722a was enacted, furthermore, the Commandant had various specific duties with respect to formulating minimum standards of approval for many kinds of water safety devices, including the four kinds mentioned in that Article, 46 U.S.C., Sections 390b, 481, 526e, 526p, and had formulated and published many such standards in detail, frequently revising and amending them. 46 C.F.R., Subsection Q, Specifications. While public officials are not invariably fair, diligent, and efficient in the discharge of their duties, it is reasonably probable, and will be presumed, that the Commandant of the Coast Guard has met this standard. This being the case it is also reasonably probable that the requirement that boats be equipped with safety devices of the type approved by the Commandant will result in the protection of the life and limb of members of the public; this, in our opinion, is all that the Constitution requires.

Consequently, we conclude that Subsection (d), Section 7 of Article 1722a, Vernon's Penal Code, is constitutional.

SUMMARY

Subsection (d), Section 7 of Article
1722a, Vernon's Penal Code, is con-
stitutional.

Yours very truly,

WILL WILSON
Attorney General of Texas

By Lawrence Hargrove

Lawrence Hargrove
Assistant

LH:mm/hmc

APPROVED:

OPINION COMMITTEE
W. V. Geppert, Chairman

Ben Harrison
Marietta Payne
Arthur Sandlin
Iola Wilcox
Joe Osborn

REVIEWED FOR THE ATTORNEY GENERAL
BY:   Morgan Nesbitt